**Robert M. SMITH**

v.

**WARDEN, MARYLAND PENITENTIARY.**

**Civ. No. 16165.**

United States District Court
D. Maryland.

June 6, 1966.

Theodore S. Miller (court-appointed), Baltimore, Md., for petitioner.

Thomas B. Finan, Atty. Gen., of Maryland, and David T. Mason, Asst. Atty. Gen., Baltimore, Md., for respondent.

THOMSEN, Chief Judge.

In May 1960, in the Criminal Court of Baltimore, Robert M. Smith (petitioner) was convicted by Judge Cullen, sitting without a jury, of the second degree murder of Edmund Lake, known as "the Shadow", and was sentenced to a term of 18 years. At his trial petitioner was represented by an attorney whom he had known for 10 or 15 years and who had represented him in a number of civil cases.

No appeal was taken from the conviction, but in 1964 petitioner filed a petition under the Maryland Post Conviction Procedure Act. In that proceeding, as here, the only points pressed by petitioner were that the testimony of Adelaide Arthur and Norma Scott at his trial had been perjured and contradicted statements each of them had made to the police shortly after the killing, and that the State's Attorney who prosecuted petitioner knew or should have known that the testimony was perjured. Petitioner was represented in the PCPA proceeding by a lawyer experienced in the handling of criminal cases; he was given a full hear-

ing before Judge Carter, at which both he and the State's Attorney who had prosecuted the case testified and various exhibits were offered. In a careful written opinion Judge Carter compared the testimony of each of the witnesses with her previous statement, and found in each instance that the testimony and statement were substantially alike. The Judge further found that their testimony was not perjured, that the record did not support the charge that the State's Attorney had knowingly used perjured testimony, and that the State's Attorney had not done anything improper. A copy of Judge Carter's opinion is attached hereto as an exhibit. An application for leave to appeal was denied by the Maryland Court of Appeals for the reasons set forth in Judge Carter's opinion. Smith v. Warden, 236 Md. 655, 205 A.2d 218 (1964).

At the hearing on his habeas corpus petition in this Court petitioner pressed the same points on which he had relied before Judge Carter. His court-appointed counsel has been very thorough and industrious in developing both the facts and the law, and the Court gave petitioner an opportunity to testify at length and to state any points on which he wished to rely. Copies of the statements given by Adelaide Arthur and Norma Scott to the police were admitted in evidence as exhibits, as well as the transcript of the testimony of Adelaide Arthur at the trial before Judge Cullen and a full transcript of the hearing in the PCPA proceeding.

■ A preliminary question is whether this Federal Court should accept the findings of fact made by Judge Carter after the hearing in the PCPA proceeding. That hearing met all the tests set out in Townsend v. Sain, 372 U.S. 293, at 313, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). See also Morris v. State of South Carolina, 4 Cir., 356 F.2d 432 (1966). This Court concludes that it should accept the findings of fact made by Judge Carter. If those findings were not accepted, this Court would make the same findings from the evidence presented at the hearing in this Court.

There are no material discrepancies between the statement given by Adelaide Arthur to the police and her testimony at the trial, or between the statement and testimony of Norma Scott. Such discrepancies as can be discovered are minor and such as would be expected where a witness testifies nearly a year after the event. The delay in the trial was caused by the fact that petitioner was first arrested in a distant State some eight months after the killing.

Counsel for petitioner argues earnestly that to obtain relief in the present proceeding petitioner need not show that the prosecuting officer had actual knowledge that the testimony was perjured, but that it is sufficient if he should have known that the testimony of the witnesses was perjured. The more severe requirement is supported by Clark v. Warden, 4 Cir., 293 F.2d 479 (1961), and Napue v. People of State of Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Petitioner's counsel relies on Wild v. State of Oklahoma, 10 Cir., 187 F.2d 409 (1951), and Jones v. Commonwealth of Kentucky, 6 Cir., 97 F.2d 335 (1938). It is not necessary for the Court to pass on that legal point, because even if the less severe burden applies, petitioner has not proved any such perjury as would bring the rule into play. Petitioner's contention that the testimony was perjured seems to be based on his feeling that the challenged testimony is not in line with the facts as he would have had the trial court, and this court, believe; and his real complaint seems to be that his claim of self-defense should have been given greater weight, either in completely excusing him of the killing (which he does not deny), or in mitigation of his sentence, which was more severe than he thought he deserved, and, allegedly, more severe than his lawyer led him to expect. In this connection it may be noted that petitioner had a record of three convictions for assault.

■ Petitioner also makes general statements of incompetency, both of his trial counsel and of his counsel in the PCPA proceeding, and contends that both

the trial and the hearing were unfair. He says that the trial consumed only fifteen minutes, whereas the transcript of the testimony of one witness ran 33 pages. Petitioner's unhappiness is understandable, but it is no ground for relief in this habeas corpus proceeding.

The Court wishes to reiterate its gratitude to counsel for petitioner for his able representation of petitioner, particularly since there is no way in which the Court can compensate him for his services.

The petition for a writ of habeas corpus is hereby denied.

Respondent's Exhibit A

| | |
|---|---|
| ROBERT M. SMITH | IN THE |
| Petitioner | CRIMINAL COURT |
| -vs- | OF |
| WARDEN OF THE | BALTIMORE |
| MARYLAND PENITENTIARY | Ind. No. 940 of 1960 |
| Respondent | P.C.P.A. NO. 765 |

Robert V. Lazzaro, Esq.   –   Attorney for Petitioner
William T. S. Bricker, Esq.   –   Attorney for Respondent

The petitioner, Robert M. Smith, heretofore filed a petition in the Criminal Court of Baltimore under the Uniform Post Conviction Procedure Act.

A hearing on the said petition was held on Monday, June 22, 1964, at which time the petitioner was present. Robert V. Lazzaro, Esq., appeared on behalf of the petitioner. The respondent was represented by William T. S. Bricker, Esq., Assistant State's Attorney.

The record reveals that the petitioner was indicted on March 10, 1960 (Ind. No. 940/60) charged with the commission of the crime of murder. On May 4, 1960, he, represented by Leonard Goodman, Esq., entered a plea of not guilty at his arraignment and trial. Thereafter, he was found guilty and sentenced to serve a term of eighteen (18) years in the Maryland Penitentiary dating from February 28, 1960.

In his petition for relief, the petitioner asserts the following contentions:

1. That he was convicted on perjured and contradictory testimony of five state witnesses; namely, Herbert A. Scott, Thelma L. Smith, Louise E. Barbour, Adelaide Arthur, and Norma M. Scott.

2. That the perjured testimony was offered into evidence with the full knowledge and approval of the assistant State's Attorney.

At the hearing in this case, the petitioner withdrew Contention 1. as to Herbert A. Scott, Thelma L. Smith, and Louise E. Barbour. It is maintained by the petitioner that the statements which Adelaide Arthur and Norma M. Scott gave to the police and their subsequent testimony at his trial were contradictory and amounted to perjury.

The record shows that on June 13, 1959, Adelaide Arthur gave a statement to the Baltimore City Police which was as follows:

\* \* \* "About 11:30 tonight, I went to 1438 N. Mount Street, to attend a wedding reception of my sister, Norma Scott. About

3:00 A. M., the reception broke up and I was sitting on the front steps waiting for my sister and her husband, to get me a cab. They left and went towards Fulton Ave. to look for a cab. While I was sitting on the step a colored man, who lives in the same house and who I know as Shadow sat on the steps with me. A boy I know as Johnny, and who I just met at the reception was in the house and was standing in the door. He went back into the house and up the steps and Shadow called to him and yelled come on down and don't bother Mildred. Shadow said, Don't bother Mildred. Then Johnny said to Shadow, I want to see Mildred to see who is boss around here, you or me. Then Shadow said, I've been living here 10 years and when Mildred says don't wake me, don't wake her. Johnny was standing in the doorway again, and me and Shadow was sitting on the steps, with a girl I know as Louise Barbera, who was sleeping. I woke Louise Barber up at this time. Johnny came down and stood on the pavement in front of the steps, and he was cussing Shadow and calling him a MF. Shadow said, Don't call me those names or you'll get hurt. Johnny kept cussing him. Shadow stood up and said, Don't do that to me, I don't allow anybody to call me those names. That's when Johnny pulled a butcher knife out of his belt and started to stab Shadow. Shadow didn't have any chance to fight back and Johnny kept stabbing him." * * *

Thereafter, on May 14, 1960, she testified at the petitioner's trial as follows:

* * * "Q. All right, now, I direct your attention to the last June the 12th, that is 1959, at about 9:00 p. m., you remember when your sister Norma got married to Herbert Scott?

A. Yes, I do.

Q. All right, would you tell His Honor what happened at that wedding and the reception that was unusual.

A. Well, when I got there around about 10:30 or quarter to eleven, Norma was already married and they introduced me to her best man, John.

Q. John, do you see him here today?

A. Yes, I do.

Q. Would you point to him, please?

A. This gentleman here.

Q. For the record indicating the defendant.
All right, then what happened?

A. And they were drinking and dancing and all so Mildred went upstairs and went to bed, she had got high.

BY THE COURT:

Q. Who is Mildred?

A. The lady in the back there, all I know is Mildred, my sister had the wedding around to her house.

Q. It was her house?

A. Miss Mildred's house.

Q. That is where the wedding was held, all right, go ahead.

A. It was around Mildred's house.

Q. All right.

A. And I said, and I sat there until around about—

Q.   Mildred wasn't the bride, that is what I mean?

A.   No, no,   No, Norma Scott.

MR. LUSBY:  Her sister Norma Scott was the bride.

THE COURT:  All right.

WITNESS:  And I sit around there and they dance and all. So Norma sat around there about 11:30, said, You all get ready and go home, I am going to clean up so it will be clean for Mildred in the morning because Scott has got to go to work.

So, everybody, she cleaned up, her and Scott and all, and I come on the front, Louise was sitting out on the front; her and the man that got killed, I forget his name.

BY MR. LUSBY:

Q.   Well, Shadow, wasn't it?

A.   Shadow.

Q.   Right.

A.   Her and Shadow was sitting on the front.

BY THE COURT:

Q.   Who, Louise and Shadow?

A.   Louise, yes.

Q.   Were sitting where?

A.   On the front steps.

Q.   On the front steps, all right.

A.   So, I asked Norma to get me a cab so I could go home.  So Norma went towards Fulton Avenue, her and her husband, to get me a cab to go home, and while I was sitting there on the steps Johnny came down the steps and looked out on the front and I said, Louise you better go in, you are high.  She gets up—

Q.   What?

A.   Louise, you better go in, you are high.

Q.   That is this Louise?

A.   Yes.  And she gets up and goes in the house.  So I sat there. Johnny gets up and goes upstairs, he comes back down.  Johnny says, Shadow hollered to Johnny said, (sic) Johnny, said, you know you ain't got no business going up the steps when Mildred goes upstairs, she don't want nobody in her room, she don't want to have nobody in her room.

So, Scotty shouts up and says, I am not talking to you MF.  So he said, Well, I am telling you when Mildred locks the door I don't want you in there.  He said Well, I will see who is going to be the boss tomorrow morning.

BY MR. LUSBY:

Q.   Who said that?

A.   John did.

Q.   Right.

A.   So, he called him another one.  So the old man raises up and says, Boy, he says, If I was in your shoes, your age, he said, I wouldn't allow nobody to call me any names like that.

Q. Shadow said that?

A. Yes.

Q. Then what happened?

A. Then John come down off the steps and stood in front of him. So, he said, You hear what I said, Boy. John said it again. So when Shadow raised up, Shadow raised up like that, he hit him with this big Butcher knife.

Q. Who hit him?

A. John did.

BY THE COURT:

Q. Hit Shadow?

A. Yes.

Q. Where did he get the butcher knife from, you see?

A. He come out of his waist line with it.

Q. Come out of his waistline?

BY MR. LUSBY:

Q. Then what happened?

A. Then I hollered, Please don't do that, please don't do that, the people next door—

Q. Did he just stab him that one time?

A. He hit him and struggled off the steps with him, Mr. Shadow was a great big man.

Q. Did he stab him more than once?

A. Yes, he did.

Q. How many times would you say?

A. Well, I know I see him twice hit him up in his chest and in the back of his collar here.

Q. Then what happened?

A. Then I was calling for Norma and by that time Norma rides up in a cab, was going to get a cab but she said she seen her rider, some fellow brought her around to take me home. She said, Oh, Johnny is cutting Shadow." * * *

In my opinion, Mrs. Adelaide Arthur's statement and subsequent testimony are substantially, if not exactly, alike. Furthermore, they are not contradictory and in no way indicate perjured testimony.

The record further shows that on June 13, 1959, Norma Mary Scott gave a statement to the Police which was as follows:

* * * "Q. Now tell us in your own words what you know about this case?

A. We was at my wedding reception in the house at 1438 N. Mount Street and it started about 9:30 last night and about 10 minutes after two this morning everybody went out and went home with the exception of my sister, Shadow (Edmund Lake) and Johnnie. Then my sister, (Adelaide Arthur), Shadow, and Johnnie was setting on the front steps when I left to carry the wedding gifts home across the street and when I came back they was still setting there, all three of them and I told my sister to wait till I get a cab for her and then to go home and I assumed that they was waiting there for

her to leave and then I go around to Fulton and Presstman Sts. and I couldn't catch a cab so I caught a fellow in a car and I told the fellow to carry me to 1438 Mount Street and as we were driving to the door and the fellow pulled up to the curb and I saw Johnnie stabbing Shadow in the back and then Shadow fell and the fellow pulled away from them and then I got out and started screaming * * *."

Subsequently, on June 14, 1960, she testified at the petitioner's trial as follows:

* * * Q. "All right, now, Norma, I direct your attention to last June the 12th, 1959, about 9:00 p. m., you remember you got married to Herbert Scott, that night?

A. Yes.

Q. Now, will you tell His Honor what happened that night especially what happened that was unusual?

A. During the wedding?

Q. And reception? The wedding, yes.

A. Nothing happened unusual that Johnny Smith was there.

Q. Well, he, who was Herbert's best man?

A. He was.

Q. Who is that, Johnny Smith?

A. Yes, when I was upstairs dressing, when I came down we had appointed another friend for it—and another fellow for it and somehow or other they didn't have any jackets and he was, he said he lived the closest too so they tell me and he got his jacket and he stood for—

Q. Now, do you see Johnny Smith that best man here today?

A. Yes.

Q. Point to him please?

A. Right here.

Q. Indicating the defendant John B. Smith. Now, what happened during the reception that was unusual?

A. Well, he, knowing that he was drinking, you know, right smart, you know, and I told him that he could not have any more, you know to drink, and that it was other guests coming and so on and so the man that was killed, Edmund, gave him some anyhow and they were sitting in the back, they were sitting back there drinking and talking and that is all I know.

Q. People started going home eventually, didn't they?

A. Yes, I told—

Q. Then what did you do?

A. Well, I cleaned up, cleaned up the house somewhat, the deceased and I, I didn't see him at the time. I thought he went out with the other people and was nobody in the house at that particular time, I saw, but the dead man and myself and my sister. And we cleaned up and shut the door and I told my sister to put her on the front steps until I went to carry the gifts home and I left her. And I left her and the dead man, you know, the deceased, on the steps, while I went to take the things home and get my sister a cab.

Q. Your sister is Adelaide Arthur?

A. Yes.

THE COURT: Who?

MR. LUSBY: The previous witness, Adelaide Arthur, is Norma's sister.

THE COURT: Oh, she is your sister, not Louise?

WITNESS: No.

BY MR. LUSBY:

Q. Then what happened, when you went there to get the cab?

A. Well, I walked down to get the cab and my husband and I, when we came back, I came back in the car, myself and as I couldn't get a cab, so I got a fellow to bring me up and the fellow pulled up to the curb to pick my sister off the steps to get off the steps because that is where I left her.

Q. That is at 1438 Mount Street?

A. At the steps and when the cab pulled up, well, I saw Johnny stabbing Shadow, had one arm around his back and I saw, I just seen the hilt part of the knife, so I kept telling the man to let me get out the cab to get out the car. Well, he pulled up about two doors, it was about two houses up before I got out, could get cut, and I started to screaming and I don't remember anything after that."

Mrs. Scott's statement and subsequent testimony are substantially the same and are not inconsistent. Therefore, in my opinion, the petitioner's contention that Adelaide Arthur's and Norma M. Scott's statements and testimony amounted to perjury is without merit.

The petitioner's second contention is a bald allegation which is unsupported by the record. Furthermore, there is no indication that the Assistant State's Attorney did anything other than that which was proper.

The petitioner was legally convicted of a crime in a court of competent jurisdiction; the sentence was not imposed in violation of the Constitution or laws of this State; the Court was not without jurisdiction to impose the sentence; the sentence is that authorized by law; and the conviction and sentence are not otherwise subject to collateral attack.

For the aforegoing reasons, the petition is hereby denied.

(s) _____

Joseph L. Carter        JUDGE

FILED: 7/28/64

cc–Mr. Invernizzi
—Robert V. Lazzaro
   William T. S. Bricker
   Petitioner