**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Alf HILL, Jr., Defendant-Appellant.**

**No. 72–1488**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

June 28, 1972.

Rehearing Denied Aug. 31, 1972.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Arthur M. Gochman, Court-appointed, Gochman & Weir, San Antonio, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., Wayne F. Speck, Asst. U. S. Atty., James E. Bock, Asst. U. S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before WISDOM, GODBOLD and RONEY, Circuit Judges.

PER CURIAM:

Alf Hill, Jr. was convicted by a jury of armed robbery within the special maritime and territorial jurisdiction of the United States, in violation of 18 U. S.C. § 2111. The Government and Hill presented their witnesses on November 22, 1971, and on the same date both sides rested their cases. On the morning of November 23, 1971, the date set for argument of counsel to the jury, the Government presented a motion to reopen the case on the grounds that one Alyce Williams who knew Hill and had some knowledge of the case, had presented herself to an FBI agent requesting that she be allowed to testify. The motion was granted. Alyce Williams was allowed to testify that, although Hill had been with her for much of the evening when the robbery was allegedly committed, he had left her home for approxi-

mately one and a half to two hours at the critical time, the time of the alleged robberies. Williams's home was only two blocks from Fort Sam Houston, where the crimes allegedly took place.

In Hill's previous trial for murder, of which Hill was acquitted, Williams had testified as an alibi witness in Hill's behalf. Williams testified that Hill was with her the entire night when the murder was alleged to have been committed. Hill's only contention on this appeal is that the prosecution improperly offered Williams's testimony with full knowledge of her incompetency and unreliability. Hill asserts that the Government's decision to call Williams to the stand violated his Fifth Amendment rights of due process.

We disagree. The only evidence of Williams's incompetence was defense counsel's own self-serving testimony that he "frankly thought that there was something mentally wrong with her." Nor is there any basis for concluding that the Government intentionally elicited false testimony, or testimony which the Government should have known was false. There is no reason to suppose that Williams's testimony was false except for its departure from her earlier testimony to the contrary. As the Government states in its brief, it believed at the time of trial and continues to believe that Williams's testimony at the robbery trial was the true version of the crucial events.

Because the Government has no reason, even now, to concede the falsity of Williams's testimony, Hill's reliance on Imbler v. Craven, C.D. Calif. 1969, 298 F.Supp. 795, is wholly misplaced. In *Craven*, the prosecutor presented obviously false testimony and the court found that "[t]he prosecutor either had reason to believe or in fact knew that each item of evidence . . . was untrue." 298 F.Supp. at 808. Equally inapposite are McCloskey v. Boslow, 4 Cir. 1965, 349 F.2d 119, and Smith v. Warden, Md. Penitentiary, 1966, D.Md., 254 F.Supp. 805. Like *Craven, McCloskey* involved the degree of a prosecutor's accountability for testimony which the record revealed to be untrue. In *Smith*, the Court stated that it had no reason to inquire into a prosecutor's responsibility for introducing false testimony "because, even if the less severe burden applies, petitioner has not proved any such perjury as would bring the rule into play." 254 F.Supp. at 806.

There was, of course, inconsistency between Williams's testimony at Hill's first trial and her revised version of the events of the same evening offered against Hill at the trial for robbery. It was, however, the jury's province, and not ours, to evaluate Williams's change of heart and to weigh her testimony as it saw fit. Unlike Gordon v. United States, 1953, 344 U.S. 414, 73 S. Ct. 369, 97 L.Ed. 447, the jury in the present case had the full story of witness Williams's discrepant testimony laid before it. Fully informed, the jury heard Williams testify about Hill's activities on the night when the crime was committed. There was no denial of due process in allowing the jury to consider Williams's testimony, for the traditional safeguard of our legal system is to expose a wavering witness to thorough cross-examination of the kind ably provided by defense counsel in this case, and then to allow the jury to decide whether or to what extent it chooses to credit the witness's testimony.

Affirmed.