UNITED STATES of America, Plaintiff-Appellee,

v.

Abraham T. OLIVA, Defendant-Appellant.

No. 73-3109.

United States Court of Appeals, Fifth Circuit.

July 17, 1974.

Manuel W. James, Key West, Fla., Lewis S. Kimler, Miami Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Michael Patrick Sullivan, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant was convicted after a jury trial under three counts of a six-count indictment: Count I, conspiring [1] with an unindicted co-conspirator (Charles Maige) and others unknown to the grand jury to possess and distribute 169 grams of cocaine in violation of Title 21, U.S.C. Sec. 841(a)(1); Count V, aiding and abetting in the distribution of the same cocaine in violation of Title 21, U.S.C. Sec. 841(a)(1) and Title 18, U.S.C. Sec. 2; and Count VI, knowingly and intentionally carrying a firearm during the commission of a felony, the violation of Title 21, U.S.C. Sec. 841(a)(1), in violation of Title 18, U.S. C. Sec. 924(c)(2).[2] We reverse for the trial court's failure to exclude hearsay testimony. Since this hearsay formed a vital link in the appellee's case, we render rather than reverse for new trial.

## THE FACTS

The events leading to appellant's arrest began the evening of June 26, 1972, when Special Agent Walde of the Bureau of Narcotics and Dangerous Drugs (BNDD) met with one Charles Maige at an establishment called Big Daddy's

---

1. Under Title 21, U.S.C. § 846, the special conspiracy penal · provision of the Drug Abuse, Prevention and Control Act, P.L. 91–513, Title II, § 406, October 27, 1970, 84 Stat. 1265.

2. Prior to trial, the government dismissed Counts II and III of the indictment, which charged appellant with knowing, possession of with intent to distribute and aiding and abetting in the distribution of 1.8 grams of cocaine, violations of Title 21, U.S.C. Sec. 841(a)(1) and Title 18, U.S.C. Sec. 2. The jury found the appellant not guilty as to Count IV of the indictment which charged him with knowing and intentional possession with intent to distribute 169 grams of cocaine, also a violation of Title 21, U.S.C. Sec. 841(a)(1).

Lounge in the Oakland Park section of Ft. Lauderdale, Florida, to arrange for the purchase of six to eight ounces of cocaine. At this meeting, Maige told Walde that he had a connection in Key West, Florida, who might be able to supply cocaine in that quantity at a price of $450 per ounce F.O.B. Key West, or $480 per ounce delivered in Ft. Lauderdale.

Maige purported to make contact with his Key West source and through further conversations with Agent Walde arranged a delivery of six ounces of cocaine for a price of $4,000 to be made in Ft. Lauderdale the following evening, June 27th. Maige was not given the money, but was promised it. At approximately 11:45 P.M. on the 27th, Maige arrived at the apartment of a confidential informant working with BNDD. Special Agent Walde and other agents were present. Maige at this time borrowed the agents' automobile and was gone for approximately 20 minutes. When he returned a beige Cadillac was observed by the agents following Maige into the parking lot of the informant's apartment. The Cadillac remained parked in the lot as Maige left the agents' car and entered the apartment building. Agent McFarland, who was present, testified that he asked Maige the identity of the two occupants of the Cadillac, and that Maige replied that they were his people from Key West. Once inside the informant's apartment, Maige produced from under his shirt a bag containing the 169 grams of cocaine. Agent McFarland testified that at this time he attempted to open the apartment door and was interrupted by Maige who cautioned him not to do so because his people from Key West would shoot him. Special Agent Walde field-tested the substance contained in the bag produced by Maige and found a positive indication of cocaine. Agent Perez then informed Maige that he would have to obtain the $4,000 from the trunk of the agents' automobile. This was a prearranged signal for other agents to move in and arrest Maige.

Meanwhile the beige Cadillac left the parking lot, and the BNDD agents dispatched a radio call for other law enforcement officials to stop the car and to arrest the occupants. Shortly thereafter a beige Cadillac containing the appellant Oliva and his ex-wife was intercepted by enforcement agents a short distance away. The two occupants were arrested. A search of Oliva revealed a .25 caliber Bauer automatic pistol in his pants pocket.

## SUFFICIENCY OF THE EVIDENCE

■ It is helpful to consider the evidence presented by the government in two categories: (i) the hearsay declarations of appellant's alleged co-conspirator, Maige, and (ii) evidence *aliunde* the hearsay. In weighing the sufficiency of the evidence to support the verdict we must decide whether the government's evidence *aliunde* the hearsay was sufficient to establish appellant's participation in a conspiracy. Only if the conspiracy was proved prima facie by independent evidence was the trial court justified in admitting the hearsay statements of Maige for the jury's consideration.

It is a long-standing rule in this Circuit that the government must introduce sufficient independent evidence of the existence of a conspiracy and of defendant's participation therein before the judge may allow declaration of a co-conspirator to go before the jury, United States v. Apollo, 5 Cir. 1973, 476 F.2d 156, 159; Montford v. United States, 5 Cir. 1952, 200 F.2d 759, 760, but we have never stated in explicit terms the standard to be used by a trial judge in determining the sufficiency of the evidence other than the hearsay. We find it necessary therefore to make precise the implications of prior holdings of this court.

■ We define the test as whether the government, by evidence independent of the hearsay declarations of a co-conspirator, has established a prima facie case of the existence of a conspiracy and

of the defendant's participation therein, that is whether the other evidence *aliunde* the hearsay would be sufficient to support a finding by the jury that the defendant was himself a conspirator.[3] This test has been expressly adopted by the First, Eighth, and Ninth Circuits. United States v. Johnson, 1 Cir. 1972, 467 F.2d 804, 807, cert. denied, 1973, 410 U.S. 909, 93 S.Ct. 963, 35 L.Ed.2d 270 (evidence "credible and sufficient to support the finding of concerted action"); Carbo v. United States, 9 Cir. 1963, 314 F.2d 718, 737, cert. denied sub nom. Palermo v. United States, 1964, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 ("[T]he test is . . . whether, accepting the independent evidence as credible, the judge is satisfied that a prima facie case (one which would support a finding) has been made"); Rizzo v. United States, 8 Cir. 1962, 304 F.2d 810, 826 ("sufficient prima facie showing . . . *aliunde* of the declaration of an alleged co-conspirator").[4] A requirement of this nature, though never clearly articulated has been implicit in our own prior decisions: United States v. Apollo, supra, 476 F.2d at 162 ("evidence . . . sufficient to support a reasonable inference [of conspiracy]"); Panci v. United States, 5 Cir. 1958, 256 F.2d 308, 311 ("evidence pointing, with the degree of clarity required for conviction in such cases, to appellant's guilt").

We must decide here, therefore, whether the government proved by evidence independent of the hearsay statements of Maige: (i) the existence of a conspiracy and (ii) appellant's knowing participation in that conspiracy. The independent evidence offered by the government to connect appellant with Maige in a conspiracy to possess and distribute cocaine may be summarized as follows: (i) appellant's presence in a crowd to which Maige made an initial inquiry as to the possible purchase of cocaine; (ii) telephone records indicating calls between numbers listed to Maige in Ft. Lauderdale and to appellant in Key West on June 27, 1972, the date of the sale; (iii) the circumstance that appellant, in the beige Cadillac, followed Maige into the parking lot adjacent to Maige's apartment shortly before the delivery of the cocaine; (iv) testimony of an Oakland Park police officer that the appellant appeared very nervous when the officer saw him in his car in the parking lot; (v) the appellant's action in driving away from the parking lot at approximately the time of Maige's arrest (characterized by the government as evidence of flight); (vi) the pistol discovered in appellant's possession upon his subsequent arrest.

█ Viewing the evidence in the light most favorable to the government,

3. We recognize that this approach, at first blush, appears to render submission of the hearsay declarations for the consideration of the jury superfluous. As the Second Circuit has pointed out, however: "Although the proof *aliunde* may suffice for submission to the jury, the jury might not be convinced by it and the utterances might tip the scale." United States v. Geaney, 2 Cir. 1969, 417 F.2d 1116, 1120, cert. denied sub nom. Lynch v. United States, 1970, 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539. It should be noted that the Second Circuit has expressly refused to adopt the prima facie test for admissibility of co-conspirator hearsay. That court relies instead on a determination whether, weighing all the evidence, the government has proved the defendant's participation in the alleged conspiracy by "a fair preponderance of the evidence independent of the hearsay utterances." Id. If so, then the hearsay is admissible. Accord, United

States v. D'Amato, 2 Cir. 1974, 493 F.2d 359.

4. The Tenth Circuit applies a test which appears similar to the prima facie showing test. That court conditions the admissibility of con-conspirator hearsay upon "proof of circumstances from which the existence of the conspiracy fairly may be inferred . . . ." Bartlett v. United States, 10 Cir. 1948, 166 F.2d 920, 925. Accord, Briggs v. United States, 10 Cir. 1949, 176 F.2d 317, 320, cert. denied 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 528. As we stated in note 3, supra, the Second Circuit has formulated a different standard. On the independent evidence requirement, see generally Davenport, The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions, 85 Harv.L.Rev. 1378, 1388–1391 (1972); Developments in the Law—Criminal Conspiracy, 72 Harv.L.Rev. 920, 984–89 (1959).

Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704, we must determine whether, from the independent evidence offered, "reasonable minds could conclude that the evidence is inconsistent with the hypothesis of the accused's innocence," United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 825 cert. denied, 1971, 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58. Proof of agreement in conspiracy trials must usually rest on the inferences to be drawn from circumstantial evidence, *Warner*, supra, at 830, but we have consistently held that mere proof of association with one "bad man" is insufficient without more to show the necessary agreement to commit criminal acts. United States v. Martinez, et al., 5 Cir. 1973, 486 F.2d 15, 24; Panci v. United States, 5 Cir. 1958, 256 F.2d 308, 312.

■ In the instant case, the government's evidence reduces to a showing that appellant was aware of Maige's interest in securing cocaine, that several telephone calls were placed between appellant's and Maige's residences immediately prior to the attempted sale of cocaine, and that appellant was present in the parking lot at the time of the attempted sale. There was no showing that appellant and Maige ever discussed the sale of cocaine to the government agents, that appellant ever agreed to supply Maige with cocaine, or that appellant ever actually furnished Maige with cocaine. No cocaine was ever shown to be in appellant's possession. This meager evidence simply is not supportive of a jury finding of conspiracy.[5] The necessary predicate was lacking and hence the hearsay testimony detailing Maige's statements about his people from Key West should not have been permitted to go before the jury. Without the benefit of this hearsay, the government's conspiracy charge falls.[6] The aiding and abetting distribution of cocaine conviction under Count V collapses also, because of the same infirmity of relying on hearsay. Lastly, without either of these felony convictions undergirding it, the Count VI conviction for knowingly and intentionally carrying a firearm during the commission of a felony may not be permitted to stand. The judgment of conviction appealed from is reversed, with directions to the lower court to dismiss the indictment.

Reversed and rendered.

5. The government cites the recent decision in United States v. D'Amato, 2 Cir. 1974, 493 F.2d 359, in support of its argument that the evidence in the instant case sustains the appellant's conviction. We distinguish *D'Amato*, on two grounds. On the facts, there was stronger evidence of the participation of D'Amato, Abrama, and Zito—Oliva's analogues—in a conspiracy to distribute heroin. On the law, as we noted in footnote 3, supra, the Second Circuit applies a less stringent test of the sufficiency of the evidence to support admission of co-conspirator hearsay than is applied in this circuit. In *D'Amato*, it was the independent evidence together with the co-conspirator hearsay that was found to be sufficient to support the jury finding of guilt.

6. The government's case, prior to trial, was expected to be stronger than events at trial bore out. Maige, under a grant of transactional immunity, had testified before a grand jury to appellant's involvement in the cocaine transaction forming the basis for this prosecution. When called to the witness stand, however, Maige contracted a suspicious and questionable lapse of memory as to his grand jury testimony. He sought to account for his poor memory by stating that he was on drugs the evening of the sale. The district judge, obviously finding it difficult to credit Maige's sudden lapse of memory, sternly advised him that he might be indicted for perjury if his testimony on the stand varied from his grand jury testimony. The judge further threatened to hold Maige in contempt should he fail to answer questions about matters as to which he had been granted transactional immunity. Finally, the judge questioned Maige at length about his testimony. Appellant's appeal is based on an additional contention that the judge so far took over the questioning and indicated his disbelief of Maige as to require reversal. Cf. United States v. Lanham, 5 Cir. 1969, 416 F.2d 1140; Baker v. United States, 5 Cir. 1966, 357 F.2d 11; Gomila v. United States, 5 Cir. 1944, 146 F.2d 372. Since we find the evidence insufficient to support conviction and reverse the conviction on that ground, we do not reach the question whether the judge's conduct of the trial was such as to require reversal.