**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David B. HANSEN, Defendant-Appellant.**

**No. 77–5082.**

United States Court of Appeals,
Fifth Circuit.

March 10, 1978.

Rehearing Denied April 7, 1978.

Jerome M. Rosenblum, Hollywood, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Michael P. Sullivan, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM and GEE, Circuit Judges, and VAN PELT,* District Judge.

GEE, Circuit Judge:

Defendant was convicted on all counts of a three-count indictment charging him with conspiracy to possess marijuana with intent to distribute, importation of marijuana, and possession of marijuana with intent to distribute. As to the importation count, the trial judge entered a judgment of acquittal notwithstanding the verdict. He sentenced defendant to four years imprisonment with a parole term of four years on the conspiracy count and five years imprisonment with a parole term of four years on the possession count. In addition to the sentences, which are to run concurrently, defendant was fined $5,000.

The evidence adduced at trial tended to show that defendant was part of a conspiracy to import more than 1,000 pounds of marijuana from Colombia. In February or March of 1976, Coughlin, one of the conspirators, went to Colombia with Blanco, a government informer who played an active role in the conspiracy, to make arrangements for landing a private plane and picking up the marijuana. Blanco and Coughlin then returned to South Florida to inform Taglione, apparently the leader of the group, of the arrangements they had made. Although Blanco originally agreed to fly the small plane to Colombia for the pickup, he reneged at the request of Drug Enforcement Administration officials. Taglione then approached defendant and asked him to make the flight. Defendant agreed.

Taglione and defendant took off from Boca Raton, Florida, at about 1:30 a. m. on April 11, 1976. The plane was next seen late in the evening of April 11 at an airport in Sebring, Florida. Agents surrounded the plane and found defendant and Taglione lying in the grass some fifty yards away. Next to the two prone figures were two bundles of marijuana. A search of the plane revealed roughly 1,000 pounds of marijuana packaged in a manner identical to that found near defendant and Taglione.

Defendant seeks reversal of the judgment below on several grounds. We find all of defendant's arguments unpersuasive and affirm the trial court's decision.

## ENTRAPMENT

Defendant argues that he was entrapped as a matter of law. He bases his argument on *United States v. Bueno*, 447 F.2d 903 (5th Cir. 1971), which held that a defendant who bought a controlled substance from a government informer and sold it to a government agent could not be convicted. This court has already held that *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976), effectively reversed *Bueno*. See *United States v. Benavidez*, 558 F.2d 308 (5th Cir. 1977). On facts similar to those in *Bueno*, the *Hampton* Court held that defendant had not made out an entrapment defense. Although Justice Rehnquist's lead opinion, which said that extensive police involvement could never be a defense where the defendant was predisposed to commit the offense, did not command the support of a majority, the present case is certainly not the extreme case in which excessive police involvement might be a defense. Here the government informer did not originate the

---

* Senior District Judge of the District of Nebraska, sitting by designation.

transaction. He was approached by Taglione. He even withdrew from the smuggling operation before the final flight to Colombia was made. Although he did help to finance and plan the operation, his involvement was certainly less than that of the government agents in *Hampton.*

■ Although defendant did not raise the issue in his original brief, he claimed at oral argument that he was not predisposed to commit the crime. In *United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970), *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972), we held that before the burden of proof falls on the government to prove predisposition beyond a reasonable doubt there must be evidence that the agent induced the accused to commit the offense. Here defendant never presented any evidence of any kind. The only relevant evidence was to the effect that Taglione was the one who asked Hansen to fly the plane to Colombia. Since defendant has not fairly raised the issue of lack of predisposition, we can hardly find entrapment as a matter of law.

## COCONSPIRATORS' STATEMENTS

■ Defendant contends that the trial court erred in admitting in to evidence extrajudicial statements made by coconspirators out of the presence of the defendant. Under Rule 801(d)(2)(E), Federal Rules of Evidence, and Fifth Circuit case law, such statements, when made in furtherance of the conspiracy, are admissible if the government produces independent evidence that the conspiracy existed and that defendant was a member. *See United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973). Defendant argues that there was insufficient independent evidence of the conspiracy and his role in it and that it was improper for the trial judge to admit these extrajudicial statements *before* the government had produced its independent evidence.

■ In order to pass muster, the independent evidence of the conspiracy must be sufficient to make out a prima facie case against the defendant, i. e., the judge must decide that a reasonable jury could convict on the basis of the independent evidence.

*United States v. Oliva*, 497 F.2d 130 (5th Cir. 1974). The government has met its burden in this case.

■ The most damning evidence against the defendant concerns the circumstances under which he was arrested. In the pre-dawn hours of April 12, 1976, police found him lying on the ground in his stocking feet with a bundle of marijuana lying within arm's reach. A few yards away lay Taglione, a coconspirator, also bootless, and by Taglione another bundle of marijuana. Defendant was lying about 50 yards from an airplane which contained approximately 1,000 pounds of marijuana wrapped in the same manner as that found next to him. Inside the plane were maps on which defendant's fingerprints were found. Other independent evidence included testimony by government informer Blanco that he had seen Hansen and Taglione at Taglione's girlfriend's house the day before and that he had later seen them get into the plane and take off. Viewing this evidence in the light most favorable to the government, as defendant concedes we must, we feel certain that it is sufficient to support a jury verdict against defendant on the conspiracy count.

■ In support of his contention that the trial court erred in allowing the government to present its "hearsay" evidence *before* presenting independent evidence of the conspiracy, defendant cites *United States v. Oliva, supra.* Defendant relies particularly on one passage in that opinion:

It is a long-standing rule in this Circuit that the government must introduce sufficient independent evidence of the existence of a conspiracy and of defendant's participation therein *before* the judge may allow declaration of a co-conspirator to go before the jury, *United States v. Apollo*, 5 Cir., 1973, 476 F.2d 156, 159; *Montford v. United States*, 5 Cir. 1952, 200 F.2d 759, 760 . . . .

497 F.2d at 132 (emphasis added). While this language might be read to support defendant's contention, it should be obvious from the citation to *Apollo* that the *Oliva*

panel did not intend to say that Fifth Circuit law requires the trial judge to have the government put on its independent evidence first and then proceed with the "hearsay" evidence if the independent evidence is sufficient. *Apollo* specifically ruled that a trial judge has discretion over the order of proof and can allow the government to present its "hearsay" evidence first as long as the judge gives a contemporaneous warning to the jury that it should not consider this evidence unless the government presents independent evidence before its rests its case. *United States v. Apollo, supra* at 163. The trial judge here gave the contemporaneous warning required by *Apollo* and repeated the independent evidence requirement in his final charge to the jury.[1]

### INFORMER'S ADDRESS

■ During cross-examination, defense counsel asked Blanco where he lived. Before Blanco could respond, the prosecutor objected and the judge called a bench conference. The prosecutor pointed out to the judge that Blanco had been held at gunpoint by Taglione and Coughlin and that he might be in danger if he gave his exact home address. The trial judge ruled that Blanco could give a general description of where he lived. Blanco then testified that he lived in "South Florida."

Defendant contends that it was reversible error for the trial judge to prevent defense counsel from eliciting Blanco's home address. However, under *United States v. Alston*, 460 F.2d 48 (5th Cir.), *cert. denied*, 409 U.S. 871, 93 S.Ct. 200, 34 L.Ed.2d 122 (1972), the defendant's claim must fail. In *Alston* the court, per Goldberg, J., held that the trial judge can properly allow a witness to refuse to reveal his home address if: (1) a response might put the witness in danger and (2) defense counsel is otherwise able to put the witness in a proper setting for the jury to be able to evaluate his credibility. We find that both of these conditions are

satisfied here. The prosecutor informed the judge that two coconspirators, one of whom was still at large, had held Blanco captive at gunpoint. When that event is added to the fact that Blanco had informed on his coconspirators, there can be no doubt that revelation of his exact address might place him in danger.

The second aspect of *Alston* is also satisfied. Blanco testified that he was a pilot, a native Colombian who had become a United States citizen, and that he had been a government informer for three and one-half years. He further testified that he had spent $10,000 in connection with this conspiracy and that the government had reimbursed him for only $2,500. He stated that he did not know if the government was going to pay him the rest. Given all this information, we think that defense counsel was able to place the witness in his proper setting. Moreover, defendant has come forward with no suggestion that "disclosure of the home address would provide a significant avenue for additional cross-examination." *Alston, supra* at 53.

### IDENTITY OF SECOND INFORMANT

■ In addition to Blanco, the government had a second informer who did not testify at trial. Defense counsel asked the court to force the government to reveal the informant's identity. After an *in camera* hearing with the prosecutor and a Custom's Agent, the trial judge denied defendant's request. Defendant argues that under *Rovario v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the trial judge should have ruled that the defendant's need to know the informant's identity outweighed the government's interest in keeping the informant's identity secret.

*Rovario* and subsequent cases have made it clear that the propriety of the trial judge's ruling depends on the specific circumstances of the case before him. *See*

---

1. Defendant does not rely on Fed.R.Evid. Rule 104(a). We reserve for another day consideration of that rule's effect, if any, on the present law regarding admissibility of extra-judicial statements under the coconspirator exception to the hearsay rule. *See also United States v. Tenorio*, 565 F.2d 943 (5th Cir. 1978).

*Rovario v. United States, supra; United States v. Fischer,* 531 F.2d 783, 787 (5th Cir. 1976). Here the government resisted disclosure on the ground that the informer was involved in other investigations whose success required his continued anonymity. The defendant did not inform the trial judge of any specific reason why the disclosure of the informant might be helpful to his case. Defense made only the general assertion that this second informer was connected with other members of the conspiracy and that it would obviously be helpful to defendant to know his identity. This is nothing more than speculation. The defendant failed to make a "showing of how disclosure of the informant's identity would be helpful to his defense." *United States v. Toombs,* 497 F.2d 88, 93 (5th Cir. 1974). The trial court did not err in refusing to grant defendant's request.

 In his brief before this court, defense counsel asserts for the first time that he believes this informer provided bail money to Taglione, who was being held on another charge, and gave him $10,000 "front money" for the purchase of marijuana in Colombia. Defense counsel claims that revelation of the informant's identity would have helped him present an entrapment defense. Counsel's "belief" as to what the informant had done is not part of the record and is not properly before this court on appeal. Even if it were, it would not help defendant. Assuming that the informer did act as counsel alleges, it would not make out a case of entrapment or outrageous police conduct. *See Hampton, supra.*

Defendant also contends that the trial judge erred in not requiring the government to produce the informer at the *in camera* hearing and in not including in the record an order applying the *Rovario* balancing test to the facts of the case as mandated by *United States v. Fischer, supra.* Defendant would have us read *Fischer* as establishing a procedure to be followed in all cases where defendant requests disclosure of an informant's identity. We have already refused to limit the trial court's

discretion in this regard. *See United States v. Alexander,* 559 F.2d 1339 (5th Cir. 1977). Given defendant's failure to articulate his need to know the informant's identity, the procedure adopted by the trial judge was not erroneous.

Defendant's remaining contentions are frivolous and do not warrant discussion. The judgment of the district court is

AFFIRMED.