**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Gilberto Pablo ALVAREZ,**
**Defendant-Appellant.**

**No. 77–5487.**

United States Court of Appeals,
Fifth Circuit.

Nov. 20, 1978.

Nago L. Alaniz, San Diego, Tex., for defendant-appellant.

J. A. Canales, U.S. Atty., George A. Kelt, Jr., Asst. U.S. Atty., Houston, Tex., John Patrick Smith, Asst. U.S. Atty., Brownsville, Tex., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The appellant, Gilberto Alvarez, was convicted of heroin trafficking charges [1] by the words of a dead man. The decedent's statements allegedly implicating Alvarez were heard only by Lopez, the prosecution's principal witness, who had earlier pled guilty to narcotics charges and received probation. In addition to other alleged trial errors, the appellant urges that Lopez' in-court testimony of the out-of-court statements by the decedent constituted inadmissible hearsay and violated his constitutional right of confrontation. We agree, and therefore reverse the judgment of the court below.

Alvarez' arrest and conviction followed a government investigation of heroin dealing in Rio Grande, Texas during the fall of 1975. An agent working undercover made contact with Jose "Chema" Lopez, the alleged "out front" man for the operation. The agent succeeded in purchasing almost 20 ounces of heroin from Lopez. Lopez would later testify that he in turn, had obtained the heroin from Lucio Mejorado, the middleman, who supposedly told Lopez that the heroin was supplied by the appellant Alvarez. At no time, however, did Lopez or any government agent communicate directly with Alvarez. Nor was Alvarez ever seen meeting with Mejorado or any other alleged members of the conspiracy. In January, 1976, indictments issued charging Lopez, Mejorado, Alvarez, and several

---

1. In a jury trial, Alvarez was convicted of conspiracy to possess and possession of heroin with intent to distribute, 18 U.S.C. § 2, 21 U.S.C. §§ 841(a)(1) and 846. He received two consecutive twelve year sentences.

others with violating narcotics laws. Within a few days, Alvarez left for Mexico where he remained for most of a year until extradition was effected. Meanwhile, Lopez pled guilty, received probation, and became the government's most communicative witness. Mejorado was convicted but died in a car accident prior to Alvarez' return to this country. When Alvarez finally came to trial, the critical evidence connecting him to the conspiracy was Lopez' report that Mejorado had identified Alvarez as the supplier. Thus, the government's case depends mightily upon the admission of the decedent's out-of-court statements. Such evidence is rank hearsay which, prior to 1975, would have been patently inadmissible. *E. g., United States v. Oliva*, 497 F.2d 130, 134 (5th Cir. 1974). With the adoption of the new Federal Rules of Evidence, however, the realm of admissibility has been significantly expanded. These rules infuse the government's claim for admission with much more serious merit than would previously have existed. Applying these new rules of evidence, and recent decisions construing them, we turn to the government's arguments that the deceased witness' words were properly used to convict the appellant.

### *Rule 801(d)(2)(E): Statement By a Coconspirator*

The first argument raised by the government is that Lopez' in-court testimony of Mejorado's out-of-court declaration was admissible as a statement by a co-conspirator under Federal Rule 801(d)(2)(E). This rule provides that a "statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is admissible because it is not hearsay at all. Traditionally, the co-conspirator exception was predicated upon the fulfillment of several requirements,[2] one of which poses an especially serious obstacle to the admission of Mejorado's incriminating words: "(S)uch declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof *aliunde* that he is connected with the conspiracy." *Glasser v. United States*, 315 U.S. 60, 74, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942). The appellant contends that the district court incorrectly applied the *Glasser* rule by allowing the introduction of alleged hearsay to rest on insufficient independent evidence of the defendant's conspiratorial complicity.[3] To assess this contention, we must first identify which evidence may be used in establishing Alvarez' participation in the conspiracy and then ascertain whether this evidence suffices to permit introduction of the co-conspirator's alleged hearsay.

■ Initially, we reaffirm the premise that the hearsay seeking admission may not be used as independent evidence of conspiracy to admit that same hearsay. *Glasser v. United States*, 315 U.S. 60, 74, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In *Glasser*, the Supreme Court declared that hearsay may not "lift itself by its own bootstraps to the level of competent evidence." 315 U.S. at 74–75,

---

2. A statement of one conspirator is admissible at the trial of a coconspirator when (1) the declaration is made in furtherance of the conspiracy, (2) during the pendency of the conspiracy, and (3) when there is independent proof of a nexus between the declarant and the defendant. *E. g., United States v. Grant*, 519 F.2d 64, 66 (5th Cir. 1975).

3. To implement *Glasser*, the trial judge instructed the jury that they could consider the coconspirator's alleged hearsay only if they separately determined that independent evidence sufficiently implicated Alvarez in the conspiracy. This procedure, prescribed for this court in *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973), has been supplanted elsewhere as four circuits have held that the new federal rules require the court rather than the jury to determine the sufficiency of independent evidence. *United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977); *United States v. Mangan*, 575 F.2d 32, 42–43 (2d Cir. 1978); *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978); *United States v. Smith*, 578 F.2d 1227, 1232 (8th Cir. 1978); *United States v. King*, 552 F.2d 833, 846 (9th Cir. 1976). Irrespective of how the rule emerges in this circuit, *United States v. James*, 576 F.2d 1121 (5th Cir. 1978), *rehearing en banc granted*, at 1132, the procedure in the present case could not be a basis for reversal. No objection was made below to the procedure followed and we have held that any possible error would not be plain error affecting substantial rights. *E. g., United States v. Tenorio*, 565 F.2d 943, 945 (5th Cir. 1978).

62 S.Ct. at 467. With the enactment of the new federal rules, though one court has concluded that this principle has been legislatively overruled. See Fed.R.Evid. 104(a), (b). Because Rule 104 permits otherwise inadmissible evidence to be used in preliminary determinations of admissibility, the First Circuit reasons that the hearsay seeking admission can be used to determine its own admissibility. This reasoning overlooks, however, that the preliminary determination commanded by *Glasser* rejects evidence not based upon its admissibility but according to whether such evidence is *independent* of the proffered hearsay. Recent decisions of our court have not qualified the requirement that the admission of coconspirator's hearsay be predicated upon independent evidence implicating the defendant. *E. g., United States v. Hansen*, 569 F.2d 406, 409 (5th Cir. 1978); *United States v. Caro*, 569 F.2d 411 (5th Cir. 1978). Moreover, the enduring vitality of *Glasser* is confirmed by the other circuits. *United States v. Mangan*, 575 F.2d 32, 42–43 (2d Cir. 1978); *United States v. Enright*, No. 77–5239, 579 F.2d 980 (6th Cir. 1978); *United States v. Santiago*, No. 77–2021, 582 F.2d 1128 (7th Cir. 1978); *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978); *United States v. Avila-Macias*, 577 F.2d 1384, 1388 (9th Cir. 1978). Accordingly, the government's threshold burden of proving Alvarez' participation in the conspiracy cannot be lightened by use of Lopez' alleged hearsay.

■ Also unavailable to the government is Lopez' unobjected-to statement that Mejorado said the "heroin was Alvarez'." Absent plain error, hearsay that is not subjected to proper objection is ordinarily admissible at trial for any relevant purpose. *E. g., Monroe v. United States*, 320 F.2d 277 (5th Cir.), *cert. denied* 375 U.S. 991, 84 S.Ct. 630, 11 L.Ed.2d 478 (1963). Thus, arguably, the unobjected-to hearsay must be severed from the properly objected-to statements in determining Alvarez' participation in the conspiracy. In this case, however, the defense had already registered its objection to Lopez' alleged hearsay testimony through a pretrial motion *in limine* and by means of previous objections at trial to substantially the same testimony. The trial court had already ruled adversely to defendant's contention. Thus, there was no need for the defense to make the assuredly futile gesture of repeating its objection. *United States v. Love*, 472 F.2d 490, 496 (5th Cir. 1973). *See also* McCormick on Evidence 18 (2d ed. 1972). Therefore, the unobjected-to statement stands with the other alleged hearsay.

■ Similarly, the government seeks to extricate from the purported hearsay two other items of Lopez' testimony in order to admit the hearsay aspects of his evidence. Here, the question is whether the supposedly severable items constitute verbal acts and can therefore be isolated from the remaining hearsay to satisfy the independent evidence test as well as to establish guilt as part of the government's case-in-chief. The verbal acts doctrine permits a witness to testify to the fact that an out-of-court conversation occurred rather than to the truth of matters asserted therein. *See Yarbrough v. Prudential Ins. Co.*, 100 F.2d 547, 548 (5 Cir. 1938); 6 Wigmore, Evidence § 1772 *et seq.* (Chadbourne rev. 1976). Invoking this doctrine, the government contends that Lopez properly testified to two phone calls he overheard Mejorado make that implicated the appellant Alvarez. According to Lopez, Mejorado called Alvarez from Lopez' home, then drove to Alvarez' place and telephoned Lopez from there. Both phone calls occurred immediately prior to the heroin delivery, a fact significantly enhancing their probative value. If Mejorado's statements to Lopez in the course of these calls comprise verbal acts, then Lopez' in-court account of those statements was properly heard by the jury.

■ Of the two phone calls, the easier one to resolve is Mejorado's call to Lopez allegedly placed from Alvarez' home. That Lopez received a call from Mejorado of itself has no bearing on Alvarez' guilt or innocence. The relevant feature of the call is that it came from Alvarez' home. Lopez' knowledge of this fact, however, was based on Mejorado's statement during the phone

call that he was speaking to Lopez from Alvarez' home. Such a statement could not be subsequently used in Lopez' testimony for the truth of the matter asserted, that is, that Mejorado called from Alvarez' home. Accordingly, Lopez' testimony about the phone call he received from Mejorado was inadmissible hearsay.

The more difficult question is whether hearsay was implicated by Lopez' testimony that he heard Mejorado call Alvarez. The record does not reflect how Lopez learned that Alvarez was on the other end of Mejorado's call. If Mejorado stated to Lopez that he was calling Alvarez, the testimony would be hearsay, and could not be used for the truth of the matters asserted therein. *United States v. Bucur*, 194 F.2d 297, 303–304 (7th Cir. 1952). If on the other hand, Lopez learned that the call was made to Alvarez by overhearing statements Mejorado made to Alvarez, a different situation arises:

> Adkins (the out-of-court declarant) placed the call and Bryant (the in-court witness) repeated what he heard Adkins tell *the person he addressed as the Coast Guard.* This was not hearsay. The fact being proved was the conversation—that is, what was stated in the conversation, not the truth of it.

*United States v. Gavagan*, 280 F.2d 319, 329–330 (5th Cir. 1960) (emphasis added). In Lopez' testimony he did not indicate how he learned the identity of Mejorado's contact. Lopez did say, however, that he "heard half the conversation." Nevertheless, because our standard of review requires us to determine whether any reasonable view of the evidence supports the lower court ruling, we assume that Lopez' testimony of the call he heard Mejorado make

to Alvarez falls within the verbal acts doctrine. Thus, such evidence would be admissible at the trial of Alvarez.

■ Even if admissible as substantive proof of guilt,[4] Lopez' testimony that he heard Mejorado call Alvarez is not an item of independent evidence of conspiracy for *Glasser* purposes. Both the evidence of the phone call and the alleged hearsay incriminating Alvarez spring from identical sources: the same out-of-court declarant, Mejorado, and the same in-court witness, Lopez. Thus, the verbal acts feature of Lopez' testimony would not significantly corroborate the purely hearsay aspects. To allow Lopez' testimony about the phone call to admit into evidence his other reports of Mejorado's statements would authorize the kind of bootstrapping condemned in *Glasser.* The applicability of the vital independent evidence safeguard must not turn on ingenious distinctions between hearsay and verbal acts. For evidence to be independent, it must corroborate the hearsay; no corroborative force is imparted by Lopez' testimony of the phone call. We therefore hold that Lopez' testimony of Mejorado's phone call to Alvarez does not constitute independent evidence of hearsay within the meaning of *Glasser.*

■ Stripped of its bootstrappings, the government's independent evidence consists of two things: Alvarez' alleged flight to Mexico, and the occasional appearance of Mejorado's truck in Alvarez' yard. Neither item is highly persuasive. The appellant explained his presence in Mexico as a consequence of a business trip; his failure to return to this country was attributed to a fear that a probation imposed for an unre-

4. Although the predicate for admissibility under Rule 801(d)(2)(E) requires evidence independent of the hearsay, no such requisite applies to evidence admitted as part of the government's case-in-chief. Thus, a verbal act might be introduced as substantive evidence since it is not hearsay, and yet be barred from the preliminary determination of admissibility of hearsay unless it is independent of the hearsay seeking admission.

This seeming anomaly results from the *Glasser* emphasis upon the independence rather than admissibility of evidence linking the defendant to the hearsay. Further, Rules 104(a) and (b) make no distinction between admissible and inadmissible evidence for the purpose of reaching a preliminary determination of admissibility. Thus, the characterization of an item as a verbal act as opposed to hearsay cannot control whether such an item may be considered in a Rule 104 determination.

lated offense [5] would be revoked as a result of the narcotics indictment. "(W)e have consistently doubted the probative value in criminal trials of evidence that the accused fled the scene of an actual or supposed crime." *Wong Sun v. United States*, 371 U.S. 471, 483 n.10, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963). The remaining ingredient of independent evidence—Mejorado's parking habits—is equally inconclusive. Living in a small town, Alvarez had known Mejorado since boyhood; they might have exchanged social visits.

Although the precise standard for evaluating independent evidence has yet to be established in this circuit, *see United States v. James*, 576 F.2d 1121 (5th Cir. 1978) (preponderance standard) *rehearing en banc granted*, at 1132, we believe that the evidence adduced below cannot satisfy any of the proffered tests. Apparent flight to evade prosecution and the parking of one conspirator's truck do not suffice whether the standard is one of substantial evidence,[6] a preponderance,[7] or prima facie case.[8] Accordingly, we find that the government's independent evidence is insufficient as a matter of law and thus we hold that Lopez' hearsay testimony cannot be admitted under Rule 801(d)(2)(E).

### Rule 804(b)(3): Declaration Against Penal Interest

Rejecting the government's contention that Lopez' testimony was admissible under the coconspirator's exception, we consider the claim that the hearsay fell within the exemption of Federal Rule 804(b)(3). The revised rules permit the admission of an out-of-court declaration against the declarant's penal interest when three tests are met: (1) the declarant must be unavailable, (2) the statement must so far tend to subject the declarant to criminal liability " 'that a reasonable man in his position would not have made the statement unless he believed it to be true'; and [(3)] if offered to exculpate the accused, [the statement] must be corroborated by circumstances clearly indicating its trustworthiness." *United States v. Thomas*, 571 F.2d 285, 288 (5th Cir. 1978). In the present case, the unavailability of the declarant, the deceased Lucio Mejorado, is manifest.

■ Turning to the second test, we conclude that Mejorado's statement was sufficiently contrary to his penal interest for Rule 804(b)(3) purposes. The incriminating declarations by Mejorado include his statement that "the heroin was Gilberto Alvarez' " and assertions that he was calling Alvarez to set up the transaction. The appellant urges that these declarations did not really contravene the interest of Mejorado, but instead served primarily to incriminate Alvarez. This court, however, has not limited the "against interest" exception to the declarant's direct confession of guilt. *United States v. Bagley*, 537 F.2d 162, 167 (5th Cir. 1976). "Rather, by referring to statements that 'tend' to subject the declarant to criminal liability, the Rule encompasses disserving statements by a declarant that would have probative value in a trial against the declarant." *United States v. Thomas, supra*, at 288. In the

---

**5.** The defendant was previously convicted of involuntary manslaughter in connection with an automobile accident.

**6.** See *United States v. Scholle*, 553 F.2d 1109, 1117 (8th Cir. 1977); *United States v. Frol*, 518 F.2d 1134, 1136 (8th Cir. 1975).

**7.** See *United States v. Petrozziello*, 548 F.2d 20, 23 (1st Cir. 1977); *United States v. Mangan*, 575 F.2d 32, 42–43 (2d Cir. 1978); *United States v. Enright*, No. 77–5239, 579 F.2d 980, 983 (6th Cir. 1978); *United States v. Santiago*, No. 77–2021, 582 F.2d 1128 (7th Cir. 1978); *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978).

**8.** See *United States v. White*, 569 F.2d 263, 269 (5th Cir. 1978), citing, *United States v. Oliva*, 497 F.2d 130, 132 (5th Cir. 1974). See also *United States v. Avila-Macias*, 577 F.2d 1384, 1388 (9th Cir. 1978).

In the present case, the judge instructed the jury that the independent evidence must show the defendant's participation in the conspiracy beyond a reasonable doubt. Although so high a standard is not required, *United States v. Oliva, supra*, it obviously could not prejudice the defendant.

present case Mejorado's remarks "strongly implied his personal participation in the . . . crimes and hence would tend to subject him to criminal liability." *Id.* at 289, *citing United States v. Barrett,* 539 F.2d 244, 251 (1st Cir. 1976). Examined in context, Mejorado's statements clearly indicated his participation "since (they) strengthened the impression that he had an insider's knowledge of the crimes." *United States v. Barrett,* 539 F.2d at 252. Accordingly, we hold that Mejorado's out-of-court statements readily meet the expansive test this circuit has adopted for determining whether remarks contravene the declarant's interest.

Rule 804(b)(3) explicitly adds a third requisite to admissibility for statements offered to exculpate the accused. In such cases, there must be corroborating circumstances that "clearly indicate the trustworthiness of the statement." Fed.R.Evid. 804(b)(3). In this case, however, we consider a statement offered to *inculpate* the accused. No express provision safeguards declarations against a defendant; the reasoning behind this omission is reflected in legislative history:

> The House amended this exception to add a sentence making inadmissible a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused. The sentence was added to codify the constitutional principle announced in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Bruton held that the admission of the extrajudicial hearsay statement of one codefendant inculpating a second codefendant violated the confrontation clause of the sixth amendment.
>
> The committee decided to delete this provision because the basic approach of the rules is to avoid codifying, or attempting to codify, constitutional evidentiary principles, such as the fifth amendment's right against self-incrimination and, here, the sixth amendment's right of confrontation. Codification of a constitutional principle is unnecessary and, where

the principle is under development, often unwise.

S.Rep.No. 93–1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. and Admin. News pp. 7051, 7068.

Thus, while specifically addressing exculpatory statements, the draftsmen of the new rules left to the courts the task of delineating prerequisites to the admissibility of inculpatory against-interest hearsay. As Congress recognized, the central underpinning of such a safeguard must be the confrontation clause of the United States Constitution.

In the mid-1960's, a series of Supreme Court decisions mold the sixth amendment right of confrontation into a shield against condemnation spoken by declarants who could not be questioned. *Roberts v. Russell,* 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Initially, the Court appeared to generally proscribe the admission of incriminating hearsay unless a traditional exception applied. *Cf. Bruton v. United States,* 391 U.S. at 128 n.3, 88 S.Ct. 1620. With subsequent decisions, though, the contours of the right of confrontation shifted to permit the introduction of out-of-court statements so long as cross-examination of the declarant was permitted at some stage of the proceedings. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The most recent in this line of decisions enunciated a new threshold for admissibility:

> The decisions of this Court make it clear that the mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that "the trier of fact (has) a satisfactory basis for evaluating the truth of the prior statement."

*Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970) *quoting, California v. Green, supra.* Thus, the central feature of Confrontation Clause analysis became the "practical concern" for the reliability of inculpatory hearsay.

█ To bring Rule 804(b)(3) within this mandate for reliability, we hold that the admissibility of *inculpatory* declarations against interest requires corroborating circumstances that "clearly indicate the trustworthiness of the statement." We believe that this construction fully corresponds to the Court's directive in *Dutton v. Evans, supra,* and will thus avoid the constitutional difficulties that Congress acknowledged but deferred to judicial resolution. Further, by transplanting the language governing exculpatory statements onto the analysis for admitting inculpatory hearsay, a unitary standard is derived which offers the most workable basis for applying Rule 804(b)(3).[9]

Moreover, attaching a requirement of trustworthy circumstances to the declaration against interest exception is necessary to a logical interrelation between that rule and the earlier discussed exemption for a coconspirator's "hearsay" under Rule 801(d)(2)(E). The great majority of statements traditionally evaluated under the coconspirator's exception may now fall within the markedly reduced threshold for against-interest hearsay. Most of the things conspirator "A" might say that could incriminate conspirator "B" could also *tend* to incriminate "A" because such a remark could "strengthened the impression that he (A) had an insider's knowledge of the crimes." *United States v. Barrett, supra.* "A's" hearsay could not be admitted against "B" under the coconspirator's exception absent proof *aliunde* of "B's" complicity in the conspiracy. *United States v. Glasser, supra.* By its terms, however, the against-interest exception would generally authorize admission irrespective of *Glasser* so long as the declarant is unavailable. Thus, there is a serious danger that the declaration against interest exception will swallow the coconspirator's exception with its attendant *Glasser* safeguard. The danger of this incongruity fortifies our conviction that the availability of Rule 804(b)(3) is predicated upon establishing circumstances of trustworthiness.

Accordingly, we hold that Lopez' hearsay testimony is admissible under Rule 804(b)(3) only if "corroborating circumstances clearly indicate the trustworthiness of the statement." *Cf. United States v. Thomas, supra* at 290. While the against-interest component of this exception poses a legal issue, the consideration of the statement's trustworthiness raises a question of fact ordinarily to be reviewed according to a clearly erroneous standard. *United States v. Bagley, supra* at 166–167. However, "(b)ecause the trial judge never reached this final question under Rule 804(b)(3), we are not bound to the 'clearly erroneous' standard . . . (r)ather, we look to the record to adduce the corroboration" for Lopez' testimony. *United States v. Thomas, supra* at 290.

█ Examining the record, we conclude that the trustworthiness of Lopez' testimony has not been sufficiently established. Under Rule 804(b)(3), trustworthiness is determined primarily by analysis of two elements: the probable veracity of the in-court witness, and the reliability of the out-of-court declarant. *United States v. Bagley, supra* at 167. Applying the first standard, we note that Lopez presumably testified in the hope of receiving preferential treatment and thus could have been motivated by a desire to "curry favor with the authorities." *Cf. United States v. Gonzales,* 559 F.2d 1271, 1272 (5th Cir. 1977). Turning to the second facet of trustworthiness, we observe that the traditional surety of reliability for this hearsay exception, the statement's contravention of the declarant's interest, is extremely weak in this case. *United States v. Hoyos,* 573 F.2d 1111, 1115 (9th Cir. 1978).

9. Therefore, in our analysis the trustworthiness of Lopez' inculpatory hearsay, we look to decisions considering exculpatory statements.

Moreover, both aspects of trustworthiness are seriously undermined by the virtual dearth of circumstances corroborating the hearsay accusation against Alvarez. "This requirement goes beyond minimal corroboration." *United States v. Barrett,* 539 F.2d 244, 253 (1st Cir. 1976). Indeed, the standard mandates "clear" corroboration. *United States v. Hoyos, supra.* For largely the same reasons that we earlier found the independent evidence in this case insufficient to invoke the coconspirator's exemption, we also rule that the circumstances do not clearly corroborate and indicate the trustworthiness of the hearsay within the meaning of Rule 804(b)(3). Therefore, we hold that Lopez' hearsay testimony may not be admitted into evidence under the exemption for declarations against interest.[10]

Our ruling that the hearsay testimony may not be used removes the government's principal evidence from the case against the appellant. The remaining ingredients, including Alvarez' apparent flight from prosecution, Mejorado's parking habits, and the fact of a phone call from Mejorado to Alvarez would not permit a verdict of guilty to stand. On substantially similar facts, this court reversed a judgment of conviction and directed the lower court to dismiss the indictment in *United States v. Oliva,* 497 F.2d 130, 134 (5th Cir. 1974). We believe that such a disposition is proper for the present case. "Since this hearsay formed a vital link in the appellee's case, we render rather than reverse for new trial." 497 F.2d at 131. Accordingly, judgment is

REVERSED and RENDERED.

---

**10.** Other indicia of trustworthiness include (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, *United States v. Bagley, supra* at 167 (2) the general character of the speaker, *United States v. Thomas, supra* at 290 (3) whether other people heard the out-of-court statement, *id.* (4) whether the statement was made spontaneously, *id.* (5) the timing of the declaration and the relationship between the speaker and the witness. *United States v. Hoyos, supra* at 1115. Of these factors, only the first and the fourth commend trustworthiness. Especially ·in view of the feeble corroboration in this case, those factors do not suffice.

Moreover, in contrast to the Supreme Court case of *Dutton v. Evans, supra* 400 U.S. at 87, 91 S.Ct. 210, the present case presents a situation where cross-examination of the out-of-

court declarant might affect the outcome of the trial. Here, the testimony was "crucial" to the government and thus "devastating" to the appellant. Further, cross-examination of Mejorado might have been helpful; his statements referred to "Alvarez;" both the appellant and his brother, Noe Corando Alvarez, were named in the government indictments.

The government also contends that Lopez' hearsay testimony was admissible under Rule 804(b)(5), the residual exception for hearsay with "equivalent circumstantial guarantees of trustworthiness." For the same reasons that the testimony failed the "trustworthiness" standard of Rule 804(b)(3), such evidence may not be admitted under 804(b)(5). *United States v. Hoyos,* 573 F.2d 1111, 1116 (9th Cir. 1978); *Cf. United States v. Thomas,* 571 F.2d 285, 289 n.2 (5th Cir. 1978).