**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Javier DE LOS SANTOS and Oscar Cervantes, Defendants-Appellants.**

No. 79–5547.

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1980.

---

Roy R. Barrera, Vincent D. Callahan, San Antonio, Tex., for defendants-appellants.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before HILL, RUBIN and ANDERSON, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Convicted of conspiracy to defraud the United States in violation of 18 U.S.C. § 371,[1] the former mayor and city manager of Mercedes, Texas, seek appellate vindication. Finding that their trial was fair, the relatively few erroneous rulings were harmless and the evidence was sufficient, we affirm.

We dispense quickly with the argument that the evidence was insufficient, for, construed most favorably to the prosecution, as it must be now that the jury has considered it sufficient to convict, it warrants the conclusions we now set forth.

Javier De Los Santos was Mayor of Mercedes and Oscar Cervantes was City Manager in 1976 when the city undertook a project to rehabilitate existing streets and sidewalks under a community development block grant from the Department of Housing and Urban Development. A contract to pave several streets was let to the low bidder, Closner Construction Company, whose principal officer was Jaime Agustino Closner.

Before the contract was signed, Mayor De Los Santos invited Closner to talk with him. Closner went to Mayor De Los Santos' office and thence went with De Los Santos to a service station owned by the De Los Santos family. The Mayor told Closner he wanted the service station paved in return for awarding the contract. Later the Mayor told Closner that he would prefer cash because people might become suspicious if the street paving contractor were

1. Each defendant was sentenced to two years imprisonment.

observed also working on the Mayor's property. The sum of $1,000 was mentioned. The Mayor told Closner that City Manager Oscar Cervantes would take care of this business.

When Closner called on Cervantes, the City Manager said that he knew of the arrangement with De Los Santos and that they wanted $3,000. Closner said he did not have any money, and Cervantes reminded him of the contract. On the basis of the contract, Closner borrowed $15,000 from a local bank, issued a check to his brother for $1,500 and another to an employee for the same amount, cashed both, and took the $3,000 thus obtained to Cervantes.

A month and a half later, when Closner submitted a bill, Cervantes directed him to De Los Santos. The Mayor demanded $3,000 more. When Closner again protested that he did not have any money, the Mayor told Closner to add the amount to an additional project, the Cedar Street project, which had been added on to the original contract without bids. Because Cervantes approved Closner's bills, Closner was assured there was no danger that the city engineer would detect the extra amount. An additional $1,000 was later extracted in a similar manner.

Closner testified and was cross-examined at length. De Los Santos and Cervantes testified in their own defense. While there was some corroboration for Closner's testimony, the entire case turned on a credibility choice: Closner against De Los Santos and Cervantes. Cervantes testified that Closner had threatened his life. The defendants both testified that Closner was allied with their political enemies and that his appearance was part of a vendetta against them. The jury was fully informed that Closner, who was 24 at the time of the street contract, and 26 at the time of the trial, had been convicted of a marijuana offense. Nonetheless, the jury, as was their prerogative as well as their duty, evaluated the evidence and chose to credit Closner. Their decision must stand unless tainted by trial error. We turn, therefore, to the alleged contamination.

■ Relying on *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973) and *United States v. Oliva*, 497 F.2d 130 (5th Cir. 1974) as the governing authority because this case was tried before our decision in *United States v. James*, 590 F.2d 575 (5th Cir.) (en banc), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the defendants complain that the trial judge erred by allowing the jury to consider coconspirator hearsay evidence. They urge that the government had failed to establish a prima facie case of conspiracy independent of the hearsay and that, therefore, the hearsay was inadmissible. *See United States v. Oliva*, 497 F.2d 130, 132–33 (5th Cir. 1974). We disregard the defendants' failure to request such a ruling or to request an advance appraisal of the evidence because, before a word of coconspiratorial utterance was admitted, the alleged coconspirator, Closner, himself took the stand. His nonhearsay testimony concerning his own acts established a prima facie case beyond peradventure. That testimony was not only admissible evidence; it was, subject to the jury's evaluation, the best evidence that there could be. Conspiracy is by its nature clandestine. In most cases, the government must attempt to establish it circumstantially. In this case, one of those who entered into the illicit agreement himself acknowledged it. His testimony concerning the statements made by De Los Santos and Cervantes was admissible under the express terms of rule 801, Federal Rules of Evidence.[2]

---

2. Rule 801(d) provides in pertinent part:
    "A statement is not hearsay if—. . . The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity or . . . (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."

De Los Santos' statements to Closner were admissible against De Los Santos under subparagraph (A). They were admissible against Cervantes under subparagraph (E). Similarly Cervantes' words with Closner were admissible directly against Cervantes and as coconspiratorial utterances against De Los Santos.

The case is not governed by *Apollo* and *Oliva* because these cases apply only when "testimony is introduced to prove the defendant's connection with a conspiracy by *hearsay statements and declarations of persons named as his coconspirators but not otherwise proven to be such.*" *Apollo*, 476 F.2d at 159 (emphasis added). Here there was adequate nonhearsay evidence to establish both defendants' participation in the conspiracy.

We have examined the record carefully for other instances of erroneous admission of hearsay. Most of the allegations of admission of hearsay are based on misapprehensions of what constitutes hearsay. "Hearsay," as defined by rule 801 of the Federal Rules of Evidence, "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Most of Closner's testimony concerning what he did and said was simply not hearsay.

▮ Some of the challenged testimony consisted of evidence of prior consistent statements by Closner. These were admissible under rule 801(d)(1).[3] Some were the statements of coconspirators in furtherance of the conspiracy.[4] Some of the evidence was excluded. There were, perhaps, a few lines of testimony that was hearsay and should have been barred. Out of the 1045 pages of testimony, they were minimal in quantity and lacked significant prejudicial effect. Defendants' rights were unaffected by the admission of that testimony, and error cannot be predicated upon it. Fed.R. Evid. 103(a); *United States v. Melvin*, 544 F.2d 767, 778, (5th Cir.), *cert. denied*, 430 U.S. 910, 97 S.Ct. 1184, 51 L.Ed.2d 587

(1977); *Langston v. Estelle*, 544 F.2d 1331 (5th Cir. 1977).

▮ The notion that Closner's testimony was "incredible as a matter of law" finds neither logical nor legal support. The trial judge did comment on the quality of the testimony but he ultimately found it sufficient as evidenced by his denial of the motion for judgment of acquittal. It did not defy physical evidence or the laws of nature, *United States v. Cravero*, 530 F.2d 666, 670 (5th Cir. 1976); *Geigy Chemical Corp. v. Allen*, 224 F.2d 110, 114 (5th Cir. 1955). Whether there were inconsistencies and, if so, how this affected Closner's credibility, were questions for the jury. *See, e. g., Hoffa v. United States*, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966); *Glasser v. United States*, 315 U.S. 60, 77–80, 62 S.Ct. 457, 468–69, 6 L.Ed. 680 (1942); *United States v. Parr*, 516 F.2d 458, 464 (5th Cir. 1975); *United States v. Hill*, 463 F.2d 235 (5th Cir.), *cert. denied*, 409 U.S. 952, 93 S.Ct. 297, 34 L.Ed.2d 223 (1972).

The case properly went to a jury of the defendants' peers. The verdict they rendered withstood the motion for judgment of acquittal. It deserves to be, and is, AFFIRMED.

---

3. A statement is not hearsay if—"The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . . ."

For example, Closner's statements to the bank officer in negotiating the loans needed to pay money to Cervantes, confirmed his testimony at trial.

4. Defendants argued to us that the instructions given the jury on the coconspirator testimony were inadequate. However, the defendants did not object to the instructions given by the judge or suggest alternative instructions. Any objection they may have had was therefore waived. Fed.R.Crim.P. 30; *United States v. Swanson*, 572 F.2d 523, 528, (5th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978).