UNITED STATES, Appellee,

v.

Joel L. NUTTER, 401–94–1816, United States Army, Appellant.

CM 444133.

U.S. Army Court of Military Review.

10 June 1986.

---

For Appellee: Lieutenant Colonel William P. Heaston, JAGC, Major Harry L. Williams, Jr., Captain Lawrence R. Hughes, Jr., Captain David W. Sorensen, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Captain Andrew D. Stewart, JAGC, Captain Jan M. Wamsted, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge: *

### I

Appellant was charged with forcible sodomy and assault with a means likely to produce grievous bodily harm (Articles 125 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 925, 928 (1982)). The aggravated assault specification alleged that appellant assaulted the victim "by striking him about the head, face, and body with means and force likely to produce grievous bodily harm, to wit: closed fists." The sodomy specification alleged only that appellant committed sodomy with the victim "by force and without [his] consent." Thus the forcible sodomy specification did not contain an allegation of the aggravating force which was alleged in the assault specification.

Prior to entry of pleas appellant moved to dismiss the aggravated assault specification on the ground that it was a lesser included offense of the sodomy specification. The trial judge erroneously granted the motion. *See United States v. DeBello,* 17 M.J. 77 (C.M.A.1983). Appellant pled not guilty. The trial judge, without objection, instructed the members that aggravated assault was before the court as a lesser included offense of the sodomy specification. By exceptions and substitutions to the sodomy specification, the members found appellant guilty of aggravated assault and sentenced him to confinement for three years. Pursuant to a post-trial agreement, the convening authority reduced the sentence of confinement to two years.

■ Appellant now contends that his conviction is invalid because aggravated assault is not lesser included in the sodomy alleged in the specification. We disagree. Appellant was on notice that he was to defend against aggravated assault as well as forcible sodomy. Had he been acquitted outright, those findings would have protected him against further jeopardy under

* Senior Judge Wold took final action in this case prior to his reassignment.

the peculiar circumstances of this case. Appellant induced the situation of which he now complains and got precisely what he asked for. He is entitled to nothing more. "A defendant who has received more than he is entitled to is in no position to complain." *United States v. Holcomb,* 39 C.M.R. 202, 207 (C.M.A.1969); *cf. United States v. Duffy,* 47 C.M.R. 658 (A.C.M.R. 1973). We also note that appellant precipitated the trial judge's instruction that aggravated assault was a lesser included offense of forcible sodomy by his motion to dismiss and that appellant concurred in the propriety of such an instruction when the trial judge announced his intention to give it. *See United States v. Sikorski* 45 C.M.R. 119, 125 (C.M.A.1972); *United States v. Sanchez,* 29 C.M.R. 32 (C.M.A. 1960); *United States v. Perry,* 33 C.M.R. 568 (A.B.R.), *pet. denied,* 33 C.M.R. 480 (C.M.A.1963).

## II

The assault of which appellant was convicted took place at the United States Disciplinary Barracks. The evidence clearly establishes the fact that the victim, an inmate of the Disciplinary Barracks, was subjected to an aggravated assault by three of his fellow inmates. The only truly contested issue was whether appellant was one of the assailants. Because the perpetrators wore masks, neither the victim nor a witness who had occupied a nearby cell could identify them. The primary evidence linking appellant with the crime was his own admission to an inmate named Hall. Hall testified to the following conversation with appellant:

Trial Counsel (TC): What did you ask [appellant]?

A: Why did he go off and beat that dude the way he did.

TC: And you were meaning, what dude were you talking about?

A: [The victim.]

TC: And did [appellant] respond to your question?

A: Yes, he did.

TC: What did he say?

A: He told me that he didn't know what got into him, he couldn't stop himself, he just went off.

TC: Did he say anything else?

A: Nothing particular, but that he just kept beating him, beating him and until they pulled him off and he snapped out of it and he realized that he had no control of hisself.

Q. Did you talk to [appellant] later on about the incident?

 * * * * * *

A: Yes.

TC: What did [appellant] say?

A: He informed me that somebody had snitched on them and that he was scared and that he was going to get the snitch, and he was scared he said cause he didn't participate in no rape, that all he did was assault him.[1]

In addition, the prosecution offered Hall's testimony as to an out-of-court statement made to Hall by an inmate named Harry S. McCray. The defense objected on hearsay grounds and also invoked the Confrontation Clause of the Sixth Amendment. The trial judge admitted portions of McCray's conversation with Hall as a statement against penal interest. The parties were agreed that McCray was unavailable and McCray did not testify at appellant's trial.

Hall testified that he had asked McCray whether McCray had committed the offenses. According to Hall, McCray then described a grisly assault and homosexual rape perpetrated on the victim by McCray and two unnamed others. Although the military judge ruled that Hall would not be allowed to testify as to statements made by McCray that either mentioned or implicated appellant by name, the details of McCray's description of the offenses (as recounted in

---

1. It could be argued that in view of these statements by appellant, the admission of the evidence discussed below was harmless. We find no error in that regard, however, so we have not resolved the harmless error issue.

court by Hall) tended to implicate appellant as one of McCray's two accomplices. In particular, Hall recounted McCray's statement that one of his fellow assailants got so "carried away" in beating the victim that he had to be pulled away. Appellant contends before us that the admission of McCray's out-of-court statement violated both the rule against hearsay and appellant's right to confrontation under the Sixth Amendment.[2]

The penal interest exception to the hearsay rule is found in Military Rule of Evidence 804(b)(3):

> (b) *Hearsay Exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> \* \* \* \* \* \*

> (3) *Statement against interest.* A statement which ... at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissable unless corroborating circumstances clearly indicate the trustworthiness of the statement.

It is clear that the core requirements of this hearsay exception have been satisfied in this case. First, there is no dispute that McCray was unavailable to testify. Second, both the content of McCray's statement and the circumstances under which it was rendered indicate the statement was against his penal interest. In essence, it was very unlikely that someone in McCray's position would have made such a statement unless he believed it was true.

Nevertheless, relying on the decision of a sister panel of this court in *United States v. Robinson,* 16 M.J. 766 (A.C.M.R.1983),[3] appellant contends that McCray's statement was still inadmissible because it was not corroborated by *independent* evidence showing that it was trustworthy. *Robinson* held first that all statements against penal interest, whether offered by an accused to exculpate himself or offered by the prosecution to inculpate an accused, must be corroborated by evidence indicating that the statement is trustworthy. *Robinson* then went on to hold that the required corroboration must be supplied by "independent" evidence. 16 M.J. at 768. *Robinson* relied on *United States v. Alvarez,* 584 F.2d 694 (5th Cir.1978), for both of these holdings.[4]

Both the *Robinson* and *Alvarez* courts used the term "independent evidence" to

2. On cross-examination, the trial defense counsel explored whether Hall had a motive to fabricate his testimony. That cross-examination, and other evidence introduced by the defense, was designed to suggest that, in order to obtain a transfer to a civilian prison and possibly an early parole, Hall had made up false testimony which was useful to the government in its prosecutions of McCray, appellant, and a third inmate. However, any motive Hall may have had to fabricate *his* testimony is at best of peripheral significance to the evidentiary and constitutional issues before us, since Hall was present in court and was confronted and cross-examined. The fact-finders had ample opportunity to make an informed and reliable determination of Hall's credibility, which was fully litigated at trial. In this connection, we disagree with *United States v. Garrett,* 16 M.J. 941 (N.M.C.M.R. 1983) (initial threshold for admission of a statement against penal interest is a determination *by the trial judge* that the declarant actually made the statement). *See Dutton v. Evans,* 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213

(1970) ("From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard.").

3. *Accord, United States v. Vazquez,* 18 M.J. 668 (A.C.M.R.1984).

4. It is our belief that *Robinson's* reliance on *Alvarez* was misplaced. *Alvarez* addressed *two* evidentiary issues, the penal interest exception (which also confronted the *Robinson* court) and the admission of a statement by a co-conspirator under Federal Rule of Evidence 801(d)(2)(E). *Alvarez* found a requirement for corroboration by means of *independent* evidence only with respect to the latter exception. With respect to the penal interest exception, the court in *Alvarez* mentioned only the need for "corroborating circumstances that 'clearly indicate the trustworthiness of the statement.'" 584 F.2d at 696–701.

mean evidence other than the circumstances under which the statement was made. In *Robinson,* the only evidence corroborating the contested statement had to do with the circumstances under which that statement was made, *i.e.,* evidence that the statement was written, sworn, and voluntary. This led the *Robinson* court to hold that the statement had not been independently corroborated and was therefore inadmissible. 16 M.J. at 768.

 We agree that statements against penal interest which are offered to inculpate an accused must be accompanied by circumstances which indicate the trustworthiness of the statement, but only because the Constitution requires indications of the trustworthiness of *any* statement which is offered against an accused without affording him an opportunity to confront the declarant. "[W]hen a hearsay declarant is not present for cross-examination at trial, ... his statement is admissible only if it bears adequate 'indicia of reliability.'" *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).[5] State-

ments admitted under a "firmly rooted" hearsay exception *ipso facto* bear adequate indicia of reliability to allow their admission without confrontation. *Id.* Statements offered under other exceptions may not be admitted without confrontation unless accompanied by a "showing of particularized guarantees of trustworthiness." *Id.*

 The penal interest exception is regarded by many as a rule of recent origin rather than a "firmly rooted" hearsay exception; others argue that this is an historical anomaly and that this exception should be regarded as "firmly rooted." We believe that the latter view is correct.[6] Indeed, the Supreme Court, in *Dutton v. Evans, supra,* indicated that it included the fact that a statement was against the declarant's penal interest among the factors which are "determinative of whether [the] statement may be placed before the jury though there is no confrontation of the declarant." 400 U.S. at 89, 91 S.Ct. at 220. We hold that since McCray's statement was against his penal interest, its admis-

---

**5.** The *Alvarez* court required corroboration of inculpatory statements not only on constitutional grounds, but also because it believed that "by transplanting the language governing exculpatory statements onto the analysis for admitting inculpatory hearsay, a unitary standard is derived which offers the most workable basis for applying Rule 804(b)(3)." 584 F.2d at 901. As noted in the legislative history of Rule 804, Congress intended to limit the requirement for corroboration of inculpatory statements against penal interest to that corroboration required by the Constitution. *See* S.Rep. No. 93–1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 7051, 7068. Thus we reject *Alvarez's* attempt to engraft a corroboration requirement by interpretation of the rule itself.

**6.** The traditional common law rule in England held that a statement confessing a crime committed by the declarant was not admissible as a declaration against interest. *See Sussex Peerage Case,* 11 Cl. & F. 85, 8 Eng.Rep. 1034 (1844). The justification for this treatment of statements against penal interest could hardly be based on the grounds that the admission of facts tending to make one liable for a criminal offense was less trustworthy than the admission of facts which tend to make one liable for a debt. Rather, the rationale for this rule was the fear of opening the door to a flood of witnesses testifying falsely to confessions that were never made or testifying truthfully to confessions

that were false. This fear was based on the likely criminal character of the witness and declarant, reinforced by the requirement that the declarant be unavailable.

E. Cleary, *McCormick on Evidence* § 278 (3d Ed.1984). Nevertheless, this view of the admissibility of declarations against penal interest later came under extensive criticism, the most cogent of which might be that of Justice Holmes in *Donnelly v. United States:*

There is no decision by this court against the admissibility of such a confession; the English cases since the separation of the two countries do not bind us; the exception to the hearsay rule in the case of declarations against interest is well known; no other statement is so much against interest as a confession of murder; it is far more calculated to convince than dying declarations, which would be let in to hang a man.

228 U.S. 243, 278, 33 S.Ct. 449, 461, 57 L.Ed. 820 (1913) (Holmes, J., dissenting). Justice Holmes' views took hold as courts gradually began to relax rules against the admission of declarations against penal interest. *See McCormick, supra,* at § 278 nn. 7 & 8 (and cases cited therein). This trend came to complete fruition with the inclusion of the declaration against penal interest as part of the Federal Rules of Evidence. *See* Fed.R.Evid. 804(b)(3).

sion was not dependent on the availability of additional corroboration, independent or otherwise.

■ The admissibility of McCray's statement is doubly clear in the case at bar since we also find that the degree to which McCray's statement incriminated him, along with the circumstances under which the statement was made, afford "particularized guarantees of trustworthiness" and "adequate indicia of reliability" whether or not the penal interest exception is "firmly rooted." *Ohio v. Roberts, supra,* 448 U.S. at 66, 100 S.Ct. at 2539. These circumstances include the very serious nature of the offenses confessed by McCray; the fact that McCray responded freely to Hall's inquiry; the fact that Hall was a fellow inmate rather than someone in authority from whom McCray might have been currying favor; and the fact that the conversation between Hall and McCray took place only a few days after the event when it was fresh in McCray's mind.

The findings of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.