UNITED STATES, Appellee,

v.

Corporal Torrance R. EVANS,
263–81–5615, United States
Army, Appellant.

ACMR 8901538.

U.S. Army Court of Military Review.

30 Nov. 1990.

For Appellant: Vaughn E. Taylor, Esquire (argued), Priscilla M. Lewis–Pierson, Esquire, Captain Jeannine C. Hinman, JAGC, Captain Michael J. Coughlin, JAGC (on brief).

For Appellee: Captain Timothy W. Lucas, JAGC (argued), Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain Randy V. Cargill, JAGC, Captain Clay E. Donnigan, JAGC (on brief).

Before MYERS, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of members of two specifications of conspiracy to commit larceny and five specifications of larceny, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 (1982) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three years and total forfeitures.

We are asked to decide, among other issues, whether the appellant was denied effective assistance of counsel and whether it was error to admit into evidence three pretrial statements of an unavailable wit-

ness. We find that the appellant was not denied his right to effective assistance of counsel and that it was not error to admit the statements.

## I. Facts

The charges arose from the appellant's off-duty employment as a dice table "stick man" for a local contractor who organized and conducted Monte Carlo Nights for the military club system in Germany. As "stick man," the appellant operated the dice table, controlling all bets on the table to include paying out house losses and taking in house winnings in the form of chips. These chips were exchanged for dollars by a cashier located elsewhere at the Monte Carlo Night location. During the course of dice games held on several nights at different locations in Germany, the appellant clandestinely passed extra chips to three fellow soldiers who cashed them and gave the proceeds to the appellant. The scheme came to light when the wife of one of the recipients noticed that her husband, SGT Moore, was receiving more chips than he had won. She noticed this because he had asked her to cash the extra chips on several occasions during the evening. When she asked her husband about it later, SGT Moore revealed the details of the scheme to her. A day later SGT Moore, in the presence of his wife, also made a self-incriminating statement to SSG Parks, a neighbor, in an effort to recruit SSG Parks into the scheme. SGT Moore was about to complete his Army enlistment and would soon be returning to the United States for discharge. Consequently, a new participant in the scheme was needed. SGT Moore generally described the workings of the scheme to SSG Parks.

After two weeks of soul-searching and unbeknownst to her husband, SGT Moore's wife reported the activity to her supervisor and to the Criminal Investigation Command (CID). When confronted by a CID investigator, SGT Moore initially denied being involved in the scheme, but subsequently gave a written statement describing the criminal enterprise. The CID investigation uncovered one other noncommissioned officer who had also received extra chips from

the appellant and who later paid the appellant the proceeds of his "extra chip" windfall. SGT Moore's wife, SSG Parks and the other noncommissioned officer testified at the appellant's court-martial. At trial, the appellant denied any wrongdoing, but admitted he paid out more chips than these players had won as part of his technique of increasing business. He asserted—and still asserts—that he enhanced certain players' winnings to create excitement at the table and thus attract more players to increase the size and probability of house winnings. The appellant's employer testified that he did not and would not ever give permission to give away extra chips, and also testified that it was impossible, given the nature of the business, to determine the extent to which money had been siphoned off.

## II. Ineffective Assistance of Counsel

The appellant, by affidavit, appellate pleadings and oral argument, asserts that he was denied the effective assistance of counsel because of serious errors and omissions by his civilian defense counsel throughout the criminal proceedings. We disagree.

The appellant asserts the following specific errors: (1) failing to elicit appellant's version of the facts at the first interview with appellant; (2) failing to keep appointments with appellant; (3) making two requests for delay in the Article 32, UCMJ, proceedings and then recommending waiver of that pretrial investigation; (4) usurping the appellant's right to select a court composed of officer and enlisted members; (5) failing to interview all available witnesses and interviewing of one key government witness only on the day preceding trial; (6) excusing the detailed defense counsel against the appellant's wishes; (7) erroneously relying on the expected suppression of SGT Moore's statement; (8) poorly defending the appellant after SGT Moore's statement was admitted into evidence; (9) failing to adequately prepare the appellant to testify on the merits; (10) employing an unsworn statement made through counsel during the sentencing phase of trial; (11) making a cursory presentencing argument;

(12) failing to coordinate clemency submissions after trial; and, (13) submitting a cursory clemency statement after trial.

 Effectiveness of counsel is measured by a two-part standard:

a. Defendant must show that counsel's performance was deficient; that is, "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment."

b. Defendant must show that such errors prejudiced the defense to the extent that they deprived the defendant of a fair trial.

*United States v. Scott*, 24 M.J. 186, 188 (C.M.A.1987), *citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). *See also United States v. Griffith*, 27 M.J. 42 (C.M.A.1988); *United States v. Brothers*, 30 M.J. 289 (C.M.A.1990). The standard for evaluation of counsel's performance is that of reasonably effective assistance, an objective standard to be measured "under prevailing professional norms." *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *United States v. Scott*, at 188; *United States v. Brothers*, at 291. Counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To make out a case of ineffectiveness of counsel, the appellant must rebut this presumption by pointing out specific errors made by his defense counsel which were unreasonable under prevailing professional norms. *Id.* 466 U.S. at 690, 104 S.Ct. at 2065; *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *United States v. Scott*, at 188.

## A. Counsel's Actions Prior to Findings

 By post-trial affidavit, the civilian defense counsel described his pretrial interview techniques, rebutted the appellant's assertions regarding missed appointments, explained his tactical reasons for recommending waiver of the pretrial investigation, explained his reasons for not interviewing certain witnesses and for not visiting the crime scenes, refuted the appellant's assertion that the appellant was unprepared to testify on the merits, and explained his trial strategy regarding the admission into evidence of SGT Moore's statement.

We have reviewed the defense counsel's affidavit and the record of trial, and find the appellant's allegations of ineffectiveness to be without merit. Prior to and during the trial on the merits, the civilian defense counsel aggressively represented the appellant's interests. He submitted a detailed brief in support of his motion to exclude the statement of SGT Moore and vigorously fought this motion at trial. After the motion was denied, he continued to represent the appellant with vigor. His strategy, described in his affidavit, is plausible and is supported by the techniques he employed during trial.

The military judge fully explained the appellant's rights to trial by a court including enlisted members, by a court of officers and by military judge alone. After this full explanation, the appellant personally elected trial by a court of officer members.

After the military judge correctly and fully explained the appellant's rights regarding counsel, the appellant excused the detailed defense counsel from that pretrial session but wanted him present at later proceedings. At those later proceedings, the military judge asked, "Captain Wolff was your detailed counsel, Corporal Evans. Do you excuse him from further participation in the trial?" The appellant answered "Yes, sir."

The appellant's knowing and conscious waiver of his right to a pretrial investigation is included in the record. The waiver, signed by the appellant, sets out in detail the rights the appellant acknowledged he was waiving. Moreover, the military judge questioned the appellant closely at trial and

made findings that the appellant knowingly and intelligently had waived this important pretrial right.

### B. Counsel's Actions During Presentencing and After Trial

The defense counsel's performance during the presentencing phase and during the post-trial phase requires careful scrutiny. In his affidavit, the civilian defense counsel did not comment on his strategy during these important phases of the military criminal process. We rely on the record of trial to determine if he met the *Strickland* standard.

The military judge fully and correctly explained to the appellant his rights and options during the presentencing phase of trial. The appellant's choice of an unsworn statement is therefore presumed to be a knowing and conscious decision. Moreover, the use of such statements is neither inappropriate nor unusual during presentencing in military criminal proceedings.

During presentencing, the government presented no aggravation evidence. This partially explains the lack of defense presentencing evidence. Further, the defense counsel had presented character evidence prior to findings, and in his short presentencing argument, he reminded the members of that earlier character testimony.

Following trial, the civilian defense counsel submitted the following four-line, two-sentence letter to the convening authority:

Please rewiew [sic] all matters presented at trial including the cross examination by the defense and consider disapproving all guilty findings and dismiss the charges. In the alternative consider reducing the sentence.

This submission is little more than a request that the convening authority do his duty as required by law. The defense counsel's letter was supplemented by a three-page letter from the appellant, apparently submitted separately. In the letter, the appellant articulately protests his innocence, points out alleged errors at trial, and asks the convening authority for relief. Further, the appellant has presented us with no new matters for sentence consider-

ation. *See United States v. Curry,* 31 M.J. 359, 377 (C.M.A.1990).

The presentencing and post-trial representation arguably could have been better in this case. But that is not the test. Counsel's representation of the appellant was reasonably effective and meets the standards of *Strickland*. The appellant has shown neither ineffectiveness nor prejudice.

We hold that the appellant was not denied his right to effective assistance of counsel as guaranteed by the Sixth Amendment.

### III. Admissibility of the Pretrial Statements

The appellant, asserts that it was error for the military judge to admit into evidence three incriminating statements made by SGT Moore who did not testify at trial. The statements included a sworn written statement made to a CID investigator and verbal statements made to SGT Moore's wife and his neighbor. The appellant challenges the admissibility of these statements on both evidentiary and constitutional grounds.

### A. Statement Against Interest to the CID Investigator

#### 1. The Evidentiary and Constitutional Standard

The government offered the statement of SGT Moore to the CID investigator as a statement against interest under Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 804(b)(3). For admission into evidence under this rule, two requirements must be met. First, the declarant must be unavailable. Second, the statement must so tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true. *Id.* In addition, there is a third requirement stemming from the Supreme Court's interpretation of the Confrontation Clause of the Sixth Amendment: independent evidence must show that the statement which inculpates an accused bears "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66,

100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). *See United States v. Robinson,* 16 M.J. 766 (A.C.M.R.1983). As the appellant has not contested the second requirement, we discuss only the first and third requirements.

### 2. Unavailability of the Declarant

■ The witness, SGT Moore, returned to the United States and was discharged from the Army at the end of his enlistment two months before charges were preferred against the appellant and four months prior to the appellant's trial. Despite government attempts to secure his presence, he refused to return to Germany. The military judge made the following findings of fact and law:

Regarding the unavailability of Mr. Moore I find:

One, that the former Sergeant Moore, now Mr. Moore, is a civilian currently residing outside the Federal Republic of Germany in Newport News, Virginia, in the United States;

Secondly, Mr. Moore is not subject to subpoena to appear in this court-martial being held in Butzbach, Federal Republic of Germany; although he would be amenable to forcible appearance had this court-martial taken place in the United States, say Fort Eustis, Virginia, which is right by Newport News;

Thirdly, that Staff Sergeant [F] of the SJA office, Butzbach spoke with the former Sergeant Moore telephonically regarding the necessity for him to appear as a witness. Mr. Moore said that he declined Invitational Orders and would not appear at this court-martial;

Four, Mr. Moore told his wife that he would not return to the Federal Republic of Germany to testify even if offered Invitational Orders and all expenses were paid for;

Five, Sergeant [H] of the Fort Eustis Staff Judge Advocate Office attempted to serve Invitational Orders on Mr. Moore, whereupon Mr. Moore refused to accept these orders, and expressed his position that he would not appear at this court-martial.

Therefore, I find that Mr. Moore is unavailable to testify as a witness in the court-martial; and, that the government has made a good faith effort to obtain his presence.

We hold that the military judge did not abuse his discretion when he ruled that the witness was unavailable. Mil.R.Evid. 804(a)(5); *United States v. Cokeley,* 22 M.J. 225 (C.M.A.1986); *United States v. Crockett,* 21 M.J. 423 (C.M.A.1986), *cert. denied,* 479 U.S. 835, 107 S.Ct. 130, 93 L.Ed.2d 74 (1986); *United States v. Bennett,* 12 M.J. 463 (C.M.A.1982). The evidence demonstrates that the government met the "good faith effort" test in attempting to secure the presence of the witness. *United States v. Wind,* 28 M.J. 381, 383 (C.M.A.1989), *citing United States v. Hubbard,* 28 M.J. 27 (C.M.A.1989) *cert. denied,* — U.S. —, 110 S.Ct. 142, 107 L.Ed.2d 101 (1989).

### 3. Indicia of Reliability

■ Although the Sixth Amendment and the hearsay rule possess similar underpinnings, they are not coextensive, and evidence admissible under a hearsay exception may be excludable under the Confrontation Clause. *Dutton v. Evans,* 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970); *United States v. Hines,* 23 M.J. 125, 127 (C.M.A.1986), *citing* E. Cleary, *McCormick on Evidence,* § 249 (3d ed. 1984).

In *Ohio v. Roberts,* the Supreme Court set forth a general approach for determining when incriminating statements, which are admissible under an exception to the hearsay rule, meet the requirements of the Confrontation Clause. 448 U.S. at 66, 100 S.Ct. at 2539. Once a witness has been shown to be unavailable, that witness' statement is admissible only if the statement of the unavailable witness bears adequate "indicia of reliability." *Id.* Reliability may be inferred if the statement falls within a "firmly rooted hearsay exception;" or, if it bears "particularized guarantees of trustworthiness." *Id.*

The Court of Military Appeals and this court have determined that statements against interest are admissible as firmly rooted exceptions to the hearsay rule.

*United States v. Wind,* 28 M.J. 381, 384 (C.M.A.1989); *United States v. Nutter,* 22 M.J. 727, 731 (A.C.M.R.1986). Under this theory of admissibility, such statements *should* be intrinsically reliable and *should* be admitted into evidence without further corroboration, under principles set out in *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Notwithstanding this general expression of judicial policy, when the statement against interest emanates from a coactor, appellate courts have required independent corroboration of the statement before holding it admissible. *See Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986); *United States v. Dill,* 24 M.J. 386, 387 (C.M.A.1987). Indeed, when a statement against interest is made by a coactor, it is "presumptively suspect" due to the strong motivation of the maker to exonerate himself at the expense of coactors. *Lee v. Illinois,* 476 U.S. at 541, 106 S.Ct. at 2062, *quoted* in *United States v. Dill,* 24 M.J. at 387. Accordingly, such statements, to be admissible, must possess particularized guarantees of trustworthiness. *Ohio v. Roberts,* 448 U.S. at 72, 100 S.Ct. at 2542.

In the case at bar, the military judge correctly looked to facts guaranteeing trustworthiness in ruling that SGT Moore's statement was admissible. SGT Moore initially denied his involvement in the scheme; however, when confronted and identified by his neighbor, SSG Parks, he immediately made a complete statement without appearing to shift the blame or responsibility. During the course of making his statement to the CID investigator, SGT Moore revealed information not previously known to the investigator; namely, that he still had at his quarters his share of the proceeds of the scheme. SGT Moore, accompanied by the investigator, immediately went to his quarters, retrieved the proceeds and voluntarily turned the money—seven hundred dollars—over to the investigator. The mili-

tary judge found this particularly significant. Having examined the record and the military judge's detailed findings of fact, we are satisfied that he carefully balanced the many factors relating to the statement's trustworthiness. We find no abuse of discretion in his ruling.[1]

Even if it was error to admit SGT Moore's statement, reversal of the conviction of those specifications affected by the statement would not be required in this case. We find as a matter of fact and law that there is overwhelming evidence of guilt, and the error, if any, is harmless beyond a reasonable doubt. *United States v. Remai,* 19 M.J. 229 (C.M.A.1985).

### B. SGT Moore's Statements to his Wife and to his Neighbor

SGT Moore described the scheme to his wife and to SSG Parks, his neighbor. While the appellant and SGT Moore were co-conspirators, his wife and SGT Parks were not. SGT Moore's statement to his wife was in response to her questions about the excessive number of chips that he was receiving from the appellant. The statement to SSG Parks was made in an attempt to recruit SSG Parks into the conspiracy. Both Mrs. Moore and SSG Parks testified at trial.

The military judge considered SGT Moore's statements to his wife and neighbor as statements made by a co-conspirator under Military Rule of Evidence 801(d)(2)(E) and as statements against interest under Military Rule of Evidence 804(b)(3). We find them admissible under both theories.

#### 1. Statements by a Co-conspirator

Military Rule of Evidence 801(d)(2)(E) states:

A statement is not hearsay if:

... the statement is offered against a party and is ... a statement by a co-con-

---

1. In so ruling, we have considered the Supreme Court's recent opinion in *Idaho v. Wright,* 497 U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), a child abuse case, in which the court appeared to proscribe use of extrinsic circumstances as corroboration of hearsay statements. Although the military judge considered extrinsic corroborating circumstances in ruling that the statement was admissible, he also considered matters surrounding the making of the statement. Assuming without deciding that *Idaho v. Wright* applies to this case, we hold that the military judge's ruling complies with that opinion.

934

spirator of a party during the course and in furtherance of the conspiracy.[2]

The Supreme Court discusses Rules 104(a) and 801(d)(2)(E) of the Federal Rules of Evidence and how they relate to the admissibility of such statements against co-conspirators in *United States v. Bourjaily*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). The wording of these two sections of the Federal Rules of Evidence is similar to the corresponding military rules.

"Whether a particular statement tends to advance the objectives of the conspiracy can only be determined by examination of the context in which it is made." *United States v. Herrero*, 893 F.2d 1512, 1528 (7th Cir.1990); *citing Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir.1989) (*quoting* J. Weinstein & M. Berger, Weinstein's Evidence, § 801(d)(2)(E) at 80–240 to 241). Statements "during the course of and in furtherance of a conspiracy" include statements made to recruit potential co-conspirators. *United States v. Herrero*, at 1527 *citing Garlington*, 283–4; *United States v. Shoffner*, 826 F.2d 619, 628 (7th Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). Statements made by a conspirator to a non-conspirator designed to secure cooperation, allay fears and insure possible future dealings have been found to be in furtherance of the conspiracy. *United States v. Overshon*, 494 F.2d 894, 899 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974); *United States v. Krevsky*, 741 F.2d 1090, 1095 (8th Cir.1984) (the requirement that an out-of-court statement further the conspiracy to be admissible is afforded a broad construction). A statement by a conspirator to his non-conspirator wife describing the conspiracy was admissible in that it furthered the conspiracy "because, with his wife's assistance and knowledge—if not complete approval—he was able to carry out his criminal responsibilities with greater facility." *United States v. Katsougrakis*, 715 F.2d 769, 778 (2d Cir.1983), *cert.*

*denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

Before such statements can be admitted into evidence under Military Rule of Evidence 801(d)(2)(E) as statements by a co-conspirator, the government must show by a preponderance of the evidence the existence of an illicit association between the declarant and the accused. *See Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. at 2778–9. Moreover, in making his ruling, the trial judge may consider any nonprivileged evidence, including the proffered statements themselves. *Id.*, 107 S.Ct. at 2780. The general requirement of unavailability does not apply to incriminating out-of-court statements made by non-testifying co-conspirators and therefore the Confrontation Clause does not prohibit the admission of such statements. *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *United States v. Marshall*, 31 M.J. 712, 714 (A.F.C.M.R. 1990). *United States v. Quick*, 22 M.J. 722, 726 (A.C.M.R.1986). Independent indicia of reliability are also not mandated by the Constitution. *Bourjaily*, 107 S.Ct. at 2782. Such statements carry with them "sufficient indicia of reliability" because the hearsay exception for co-conspirator statements is a firmly rooted one. Therefore, the Supreme Court has held "... the Confrontation Clause does not require a court to embark on an independent inquiry into the reliability of statements that satisfy the requirements of [Federal Rules of Evidence] Rule 801(d)(2)(E)." *Bourjaily*, 107 S.Ct. at 2783.

We hold that the military judge correctly found that a conspiracy existed between SGT Moore and the appellant, and that the statements made by SGT Moore to his wife and to his neighbor were made during and in furtherance of the conspiracy. The statement to SSG Parks was made in an attempt to recruit SSG Parks into the conspiracy to replace SGT Moore when SGT Moore was discharged from the Army.

**2.** Why statements of co-conspirators are classified as non-hearsay in the Federal Rules of Evidence rather than being classified as an exception to the hearsay rule is discussed at length

by Justice Blackmun, dissenting, in *United States v. Bourjaily*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

The statement to SGT Moore's wife was made to quiet her questions about the unexplained chips and thus protect the conspiracy and possibly recruit her into it. We find that these statements were correctly admitted into evidence under Military Rule of Evidence 801(d)(2)(E).

2. Statements Against Interest

The record indicates that the military judge also based his ruling on Military Rule of Evidence 804(b)(3). Using two evidentiary bases for admissibility is permissible. *See, e.g. United States v. Katsougrakis,* 715 F.2d at 777. We agree that these statements are admissible on this basis.

The remaining assignments of error, including the errors personally raised by appellant, are without merit. The findings of guilty and the sentence as approved by the convening authority are affirmed.

Senior Judge MYERS and Judge WERNER concur.

Senior Judge WALTER K. MYERS took final action in this case prior to his retirement.