# UNITED STATES NAVY-MARINE CORPS
# COURT OF CRIMINAL APPEALS
# WASHINGTON, D.C.

**Before**
**J.A. FISCHER, K.M. MCDONALD, D.C. KING**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**ADRIANA H. GUERRERO**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

**NMCCA 201300397**
**GENERAL COURT-MARTIAL**

**Sentence Adjudged**: 17 May 2013.
**Military Judge**: CAPT Kevin O'Neil, JAGC, USN.
**Convening Authority**: Commanding General, 3d Marine
Logistics Group, Okinawa, Japan.
**Staff Judge Advocate's Recommendation**: LtCol P.D. Sanchez,
USMC.
**For Appellant**: LT Jessica Fickey, JAGC, USN.
**For Appellee**: Maj Crista Kraics, USMC; Maj Paul Ervasti,
USMC.

**30 October 2014**

---------------------------------------------------------
**OPINION OF THE COURT**
---------------------------------------------------------

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS
PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

KING, Judge:

A general court-martial, consisting of members with
enlisted representation, convicted the appellant, contrary to
her pleas, of conspiracy to evade immigration laws, willful
dereliction of duty, making a false official statement, larceny
of military property, and making a false claim, in violation of

Corrected Opinion Issued on 4 November 2014

Articles 81, 92, 107, 121, and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 892, 907, 921, and 932. The members sentenced the appellant to confinement for 2 years, reduction to pay grade E-1, total forfeitures, a $100,000.00 fine, and a dishonorable discharge. The convening authority approved the sentence as adjudged, but suspended $65,000.00 of the fine for 12 months.

The appellant raises four assignments of error (AOE): (1) the military judge abused his discretion by admitting hearsay statements into evidence; (2) the dereliction conviction is legally and factually insufficient as to the specified dates of the offense; (3) the convening authority's action is erroneous, and; (4) she received ineffective assistance of counsel at trial.[1]

We find merit in the appellant's first assignment of error and will take corrective action in the decretal section of this opinion.

### Background

In October 2002, the appellant married Mr. Jesus Andrade. At the time of the marriage, the appellant was a lance corporal in the Marine Corps and Mr. Andrade was an undocumented immigrant living and working on a ranch in San Miguel, California.

The couple did not live together during the marriage. The appellant continued her career with the Marine Corps while Mr. Andrade continued living in San Miguel and, later, Mexico. In the years that followed, the appellant collected many thousands of dollars in military allowances after she falsely claimed that Mr. Andrade had relocated to San Bruno, a city with a substantially higher allowance for housing than his actual city of residence. Yet the appellant never provided financial support to Mr. Andrade. As a result, the Government charged the appellant with, *inter alia*, conspiring with Mr. Andrade to enter into a "sham" marriage for which Mr. Andrade would receive immigration benefits and the appellant would draw the monetary entitlements afforded to married Marines. Additional facts necessary for resolution of each AOE are developed below.

---

[1] This fourth assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

**Discussion**

## 1. Admission of Hearsay Statements

In Specification 1 of Additional Charge I, the appellant was charged with and convicted of conspiring with Mr. Andrade to evade provisions of United States immigration laws by knowingly entering into a sham marriage.[2] In an Article 39(a), UCMJ session, the Government moved *in limine* to admit the testimony of three witnesses about statements that Mr. Andrade made to them concerning the conspiracy he had entered into with the appellant. The Government argued the statements were admissible as the statements of a co-conspirator under MILITARY RULE OF EVIDENCE 801(d)(2)(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). The appellant opposed the admission of these statements, arguing that Mr. Andrade's statements did not qualify as non-hearsay.

We review a military judge's decision to admit evidence for an abuse of discretion. *United States v. Cucuzella*, 66 M.J. 57, 59 (C.A.A.F. 2008). Hearsay is generally inadmissible. MIL. R. EVID. 802. However, a statement is not hearsay if the accused is part of a conspiracy, the statement is made by the accused's co-conspirator, and the statement is made "during the course of and in furtherance of the conspiracy." MIL. R. EVID. 801(d)(2)(E). Here, the appellant contends that the statements were not "in furtherance" of the conspiracy. We agree.

After reading the parties briefs and hearing argument, the military judge informed the parties that "[a]s discussed in the 802, the [c]ourt tended to agree that the statements were status reports of an ongoing conspiracy, but [the] [c]ourt cannot tell if there is any conspiracy until there is some other evidence offered of the conspiracy."[3] Therefore, the military judge stated: "I will at this point reserve ruling on your motion *in limine* because you have not set forth sufficient evidence for me to be able to rule . . . . So I need to see what evidence is presented. And, if and when, you desire to offer these statements and you still desire to offer them as co-conspirator statements, request a 39(a). We will address this matter again."[4] The issue was never revisited on the record. The

---

[2] The appellant was also charged with entering into a conspiracy with Mr. Andrade to commit the offense of larceny of military entitlements and allowances by knowingly entering into a sham marriage. The members acquitted her of this offense.

[3] Record at 283.

[4] *Id.* at 286.

Government did not request an Article 39(a), UCMJ session prior to offering evidence of the hearsay statements and the defense did not renew its objection when the statements were ultimately offered.  Instead, trial before the members commenced and the members heard evidence of the statements.

From the record, we infer that the military judge believed the statements would meet the requirements for admissions of a co-conspirator provided the Government first established that there was a conspiracy.  Shortly thereafter, the members were seated and the Government called as its first witness a special agent of the Naval Criminal Investigative Service, who testified substantially as set forth in the background section of this opinion, thus satisfying this prerequisite.  Next, the Government called the three witnesses who testified in turn regarding the statements Mr. Andrade made to them.  Under these circumstances, we conclude that the military judge determined that there was sufficient evidence that a conspiracy existed and that the statements were "in furtherance" thereof.[5]

To determine whether the military judge abused his discretion, we turn now to the statements themselves.  Sometime in 2002, before the appellant and Mr. Andrade were married, Mr. Andrade had a conversation with his employer, Mr. John Walters.  At trial, Mr. Walters testified as follows:

> [Mr. Andrade] had looked into it, essentially, and said that he was possibly going to marry someone in the military, and that would probably be the fastest way to get his legal status taken care of.
>
> . . .
>
> Well, he essentially said that this would be the fastest way, and that it would benefit him by the legal status that he would hopefully acquire from the marriage, and it would benefit her.  I had no idea what the benefit for her was, I didn't ask the question.[6]

Mr. Andrade's brother, Mr. Francisco Tapia, also testified at trial about a conversation that happened sometime between

---

[5] Under these circumstances, we decline to hold that the appellant forfeited the issue by not renewing his objection.  *United States v. Dollente*, 45 M.J. 234, 239-40 (C.A.A.F. 1996);  *see also* Art. 66(c), UCMJ.

[6] Record at 461-62.

4

2002 and 2007 in which Mr. Andrade explained his reason for marrying the appellant:

> I had understanding, what [Mr. Andrade] told me, it was that he was going to get some benefits being legal in the country.
>
> . . .
>
> Yeah, he told me that [the appellant] was going to get some benefits, and he was going to get benefits, that's what he told.[7]

Finally, Mr. Tapia's wife, Mrs. Sandra Morales, also testified at trial about a conversation with Mr. Andrade:

> Q.   And how did he describe his marriage to you?
> A.   It was nothing to him. It wasn't like, he was married, like if he wanted to. Like, he just got married. It wasn't, like, love, you know?
>
> Q.   Now, did he describe to you the reason why they got married?
> A.   Yes.
>
> Q.   What was that?
> A.   For him is to get his paper fixed.  It was for him to get, like, a visa, you know, to come in and out of Mexico, to visit his family; and for her, for her benefits, through the Marines.
>
> Q.   Now did he mention specifically that she was going to get some benefit out of it?
>
> A.   Yes.
>
> Q.   What did he tell you?
> A.   Like, more money, like, for her to have, and just for her to have his papers, that's why he did it. But, you know—
>
> Q.   So he described to you that the marriage was beneficial for him for immigration papers?
> A.   Yeah.

---

[7] *Id.* at 504.

    Q.    And beneficial for her in getting more money from
    the Marine Corps?
    A.    Yes, yes.[8]

    Whether a statement of a co-conspirator is "in furtherance
of" a conspiracy has vexed courts and scholars alike.  *See* 5
Weinsteins Federal Evidence, § 801.34 and cases cited therein.
However, generally speaking, a co-conspirator's statement is
considered to be in furtherance of the conspiracy "as long as it
tends to promote one or more of the objects of the conspiracy."
*United States v. Piper*, 298 F.3d 47, 54 (1st Cir. 2002)
(citation omitted).

    When one member of a conspiracy reports to another member
about the status of a conspiracy, this may advances an object of
the conspiracy by ensuring that all members of the conspiracy
have up-to-date information.  *See United States v. Ratliff*, 42
M.J. 797, 801-02 (N.M.Ct.Crim.App. 1995).  However, Mr.
Andrade's statements were not to fellow co-conspirators, but to
uninvolved third parties.  For this reason, we reject any
conclusion that these statements were "status reports of an
ongoing conspiracy."[9]  While there are situations where
statements to uninvolved third parties may advance the goals of
a conspiracy (e.g., statements made in an attempt to recruit a
third party into a conspiracy and statements made in an attempt
to allay a third party's suspicions about a criminal
undertaking, *United States v. Evans*, 31 M.J. 927, 934 (A.C.M.R.
1990)), none of these situations apply here.  Instead, the
statements at issue were "mere narrative declarations" about the
conspiracy, which did not tend to promote any object of the
conspiracy.  *United States v. Kellett*, 18 M.J. 782, 785
(N.M.C.M.R. 1984).  Accordingly, the military judge abused his
discretion by admitting them.

    Having found error, we test for prejudice.  To determine
whether an appellant was prejudiced by erroneously admitted
evidence, we balance four factors: (1) strength of the
Government's case, (2) strength of the defense case, (3)
materiality of the erroneously admitted evidence, and (4)
quality of the erroneously admitted evidence.  *United States v.
Ediger*, 68 M.J. 243, 250 (C.A.A.F. 2010).

    The Government's case of conspiring to evade immigration
laws rested on inferential and circumstantial evidence.  The

---

[8] *Id.* at 537-38.

[9] *Id.* at 283.

6

Government was required to prove that the appellant specifically intended to evade a provision of United States immigration laws. *See* 8 U.S.C. 1325(c). Though the Government had ample proof that the marriage was a sham, the only other evidence of a conspiracy to evade immigration laws was the fact that the appellant submitted Prosecution Exhibit 2, an Immigration and Naturalization form, signed by her husband, seeking to modify Mr. Andrade's alien status.

While the appellant did present some evidence suggesting that she and Mr. Andrade had been in love at the time the marriage was entered in to, the defense case was otherwise weak.

The erroneously admitted hearsay statements were material because they went directly to the elements of the conspiracy, as evidenced by the trial counsel's opening statement: "the government's going to present you with the best evidence we have, which is the boss, the brother, and the sister-in-law of what the intent was of this marriage."[10] The hearsay statements did indeed tend to show that the marriage was a sham and that it was specifically arranged for the purpose of, in part, allowing Mr. Andrade to obtain a beneficial immigration status.

Finally the quality of the evidence was high. The hearsay statements were presented by three different witnesses with no reasonable motive to lie. In fact, all three witnesses were granted federal testimonial immunity.

Balancing all four factors, we conclude that the appellant was prejudiced by the erroneous admission of the hearsay statements against her. We therefore set aside the appellant's conviction on this offense.

## 2. Legal and Factual Sufficiency of the Dereliction Conviction

The appellant next contends that her conviction for willful dereliction of duty is legally and factually insufficient. We review legal and factual sufficiency *de novo*. *See* 10 U.S.C. § 866 (2012). The test for legal sufficiency is whether any reasonable trier of fact could have found that the evidence met the essential elements of the charged offense, viewing the evidence in a light most favorable to the Government. *United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the

---

[10] *Id.* at 359.

fact that we did not personally observe the witnesses.  *Id*. at 325.

In March of 2004, the appellant executed an unaccompanied permanent change of station to Okinawa, Japan.  Once in Okinawa, the appellant filed paperwork falsely claiming that her husband had relocated to San Bruno, CA, a location with a significantly higher housing allowance than his actual city of residence.  In September 2007, Mr. Andrade fled to Mexico and did not return.  The Government preferred a charge of dereliction of duty, alleging that ""between on or about July 2007 and ... 15 May 2011, [the appellant] was derelict in the performance of those duties in that she willfully failed to update the geographic location of her husband, as it was her duty to do."

The Government's theory was that the appellant was required to update her record when her husband departed for Mexico.  The appellant argues that the Government failed to prove that she knew about her husband's departure until the summer of 2008.  Therefore, the appellant argues that she may not be found guilty of willful dereliction prior to 2008.  We disagree.

We are not bound in our determination of the factual and legal sufficiency of the evidence by the theories advanced by the Government, nor were the members bound to accept the Government's theory in order to find the appellant guilty. *United States v. Gonzalez*, 1992 CMR LEXIS 763 (N.M.C.M.R. 1992) (citing *United States v. Rounds*, 30 M.J. 76 (C.M.A. 1990)).  In addition to evidence that Mr. Andrade fled to Mexico in 2007, the members received evidence that "[e]ach Marine is responsible for reporting events that may affect pay entitlements[.]"[11] The members were instructed that the elements of this offense were that (1) the appellant had a duty to update the geographic location of her husband; (2) that the appellant actually knew or reasonably should have known of this duty; (3) that between on or about July 2007 and between on or about 15 May 2011 the appellant was willfully derelict in the performance of that duty in that she failed to update the geographic location of her husband.  The record amply supports a finding that the appellant's duty to correct her pay commenced from the moment she falsely reported that Mr. Andrade lived in San Bruno.  Thus, the members' verdict that the appellant was guilty of willful dereliction of duty is legally and factually sufficient.

---

[11] PE 17 at 5.

## 3. Ineffective Assistance of Counsel

The appellant's final assignment of error concerns ineffective assistance of counsel. The appellant argues that her trial defense counsel erred by failing to correctly advise her of the maximum sentence and failing to pursue a pretrial agreement.

We analyze ineffective assistance of counsel claims under the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove ineffective assistance of counsel, the appellant must show: (1) that trial defense counsel's performance was deficient, and (2) that the deficiency resulted in prejudice. *Id.*

For the second prong of *Strickland*, the appellant bears the burden to "affirmatively prove prejudice." *Id.* at 693. We find that the appellant has not met that burden here. Though the appellant's post-trial declaration avers that knowledge of the correct maximum sentence or the opportunity to pursue a pretrial agreement "would have impacted [her] decisions at trial,"[12] the appellant has submitted no evidence to establish that the outcome of the court-martial would have actually been different but for the alleged deficiency. Accordingly, we need not analyze the first prong of *Strickland*. We grant no relief for this assignment of error.

## 4. Sentence Reassessment

Having set aside the appellant's conviction on Specification 1 of the Additional Charge (conspiracy to evade immigration laws), we must consider whether we can reassess the sentence or whether this case should be returned for a sentence rehearing.

This court has "broad discretion" in deciding to reassess a sentence to cure error and in arriving at the reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). This is so because judges of the Courts of Criminal Appeals can modify sentences "'more expeditiously, more intelligently, and more fairly' than a new court-martial." *Id.* at 15 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). Pursuant to the four factors set forth in *Winckelmann*, we are confident we can reassess the sentence in this case. First, as a result of reversing the conspiracy conviction, the maximum possible sentence to confinement is reduced from 25 years and

---

[12] Appellant's Motion to Attach of 27 Feb 2014, Appellant's Declaration at 3.

six months to 20 years and six months.  This is not a dramatic change in the penalty landscape or exposure.  Second, the appellant was sentenced by members.  While we recognize that this may reduce the certainty to which we can afford our reassessment, this factor is not dispositive.  Third, the gravamen of the appellant's offenses is that she entered into a sham marriage and made false official statements to steal money from the United States.  The appellant still stands properly convicted of committing those offenses.  Finally, this court collectively has ample experience with allowance fraud and larceny under similar facts.  This experience informs us that we are able to reliably determine what sentence would have been imposed at trial.

Therefore, under the unique facts of this case and considering the totality of the circumstances, we find we are able to "determine to [our] satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).  Accordingly, we will affirm the sentence as adjudged with the exception of the dishonorable discharge, affirming instead a bad-conduct discharge.

## Conclusion

The findings of guilty of Additional Charge I and Specification 1 thereunder are set aside and that charge and specification are dismissed.  The remaining findings are affirmed.  Upon reassessment, we affirm only that part of the sentence that extends to confinement for two years, total forfeitures, a fine of $100,000.00, reduction to pay grade E-1, and a bad-conduct discharge.

For the Court

R.H. TROIDL
Clerk of Court

10